[No. B225393. Second Dist., Div. Three. July 27, 2011.]

TOYOTA MOTOR CORPORATION et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MICHAEL STEWART, Individually and as Personal Representative, etc.,
et al., Real Parties in Interest.

## COUNSEL

Bowman and Brooke, Vincent Galvin, Kathleen A. York; Bingham McCutchen, Frank M. Hinman and Robert A. Brundage for Petitioners.

Thomas N. Vanderford; Lewis, Brisbois, Bisgaard & Smith, Anthony E. Sonnett and Sharon E. Sonnett for Hyundai Motor America and Hyundai Motor Company as Amici Curiae on behalf of Petitioners.

Ellen J. Gleberman and John Whatley for Association of International Automobile Manufacturers, Inc., as Amicus Curiae on behalf of Petitioners.

Snell & Wilmer, Mary-Christine Sungaila and Andreea V. Micklis for International Association of Defense Counsel and National Association of Manufacturers as Amici Curiae on behalf of Petitioners.

Coben & Associates Anapol Schwartz and Larry E. Coben for The Attorneys Information Exchange Group as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

O'Reilly Collins, John P. Kristensen and Matthew W. O'Reilly for Real Parties in Interest.

Steven B. Stevens; Law Office of Gary Simms and Gary L. Simms for Consumer Attorneys of California as Amicus Curiae on behalf of Real Parties in Interest.

OPINION

**CROSKEY, J.**—Defendants and petitioners Toyota Motor Corporation, Toyota Motor North America, Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, Toyota), seek a writ of mandate directing the trial court to vacate its order granting a motion to compel Toyota to produce five of its employees, who are Japanese residents, for deposition in California and to enter a new and different order denying that motion.

. Code of Civil Procedure section 1989[1] provides that a nonresident of California is not obliged to attend as a witness in this state. After a careful review of the relevant statutes and related legislative history, we conclude that this residency limitation applies not only to trials, but also to discovery. As a result, the trial court has no authority to compel Japanese residents to come to Los Angeles to attend depositions. Neither the legislative history nor the meager case authority on this issue persuasively provide otherwise. We will therefore grant Toyota's petition for a writ of mandate and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2009, plaintiffs and real parties in interest Michael Stewart and Shawna Stewart, individually and as personal representatives and successors-in-interest to the estate of Michael Levi Stewart, and Logan Ivie, Tucker Hathaway and Luckus Sisiam (collectively, plaintiffs) filed this products liability action against Toyota. The action arose out of the 2007 single vehicle crash of plaintiffs' Toyota pickup truck in Idaho. In summary, plaintiffs alleged that (1) the steering rod in their vehicle contained a defect that caused it to crack and break; (2) the failed steering rod prevented steering, resulting in the crash; (3) decedent Michael Levi Stewart, as well as plaintiffs Ivie, Hathaway and Sisiam, all were injured in the crash; (4) decedent subsequently died of his injuries; and (5) after learning of the alleged defect, Toyota waited too long to recall affected vehicles, and instituted a recall in Japan before it did so in the United States.

In March 2010, plaintiffs noticed the depositions of five individual Toyota employees as individual witnesses, not corporate representatives. All five individuals are Japanese residents. They are: Hiroyuki Yokoyama, a Japanese executive and former head of Toyota's customer quality engineering division in Japan; Mitsatiru Kato, who works at Toyota in Japan; Tag Taguchi, who had been assigned to Toyota's North American operation but had returned to

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

Japan; Shinji Miyamoto, current head of the customer quality engineering division in Japan; and Morikazu Tsuji, who heads a subgroup there.

After plaintiffs sought deposition dates for these witnesses, Toyota declined to produce them for deposition in California and responded that the individual employees must be deposed in Japan. In April 2010, plaintiffs moved to compel Toyota to produce the five Japanese residents for depositions in Gardena, California. Plaintiffs conceded that section 1989 precluded the court from ordering Japanese witnesses to travel to California for *trial*, but asserted the court had authority under section 2025.260[2] to compel said witnesses to travel to California for *deposition*.

In opposition to the motion to compel, Toyota argued section 1989 precludes the court from compelling a foreign national to submit to deposition in California. Instead, a party seeking to depose a resident of a foreign country may depose the witness in his or her homeland pursuant to section 2027.010. In the alternative, Toyota argued that even assuming section 2025.260 authorized the court to compel a foreign resident to

---

[2] Section 2025.250 sets general limits on the location of a deposition, while section 2025.260 provides for exceptions. Section 2025.250, subdivision (a), states in pertinent part: "(a) *Unless the court orders otherwise under Section 2025.260,* the deposition of a natural person, whether or not a party to the action, shall be taken at a place that is, at the option of the party giving notice of the deposition, either within 75 miles of the deponent's residence, or within the county where the action is pending and within 150 miles of the deponent's residence." (Italics added.) Section 2025.260 provides: "(a) A party desiring to take the deposition of a natural person who is a party to the action or an officer, director, managing agent, or employee of a party may make a motion for an order that the deponent attend for deposition at a place that is more distant than that permitted under Section 2025.250. This motion shall be accompanied by a meet and confer declaration under Section 2016.040. [¶] (b) In exercising its discretion to grant or deny this motion, the court shall take into consideration any factor tending to show whether the interests of justice will be served by requiring the deponent's attendance at that more distant place, including, but not limited to, the following: [¶] (1) Whether the moving party selected the forum. [¶] (2) Whether the deponent will be present to testify at the trial of the action. [¶] (3) The convenience of the deponent. [¶] (4) The feasibility of conducting the deposition by written questions under Chapter 11 (commencing with Section 2028.010), or of using a discovery method other than a deposition. [¶] (5) The number of depositions sought to be taken at a place more distant than that permitted under Section 2025.250. [¶] (6) The expense to the parties of requiring the deposition to be taken within the distance permitted under Section 2025.250. [¶] (7) The whereabouts of the deponent at the time for which the deposition is scheduled. [¶] (c) The order may be conditioned on the advancement by the moving party of the reasonable expenses and costs to the deponent for travel to the place of deposition. [¶] (d) The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to increase the travel limits for a party deponent, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."

attend a deposition in California, the balancing test of section 2025.260, subdivision (b) weighed against compelling the depositions to be taken in California.

On June 15, 2010, the trial court granted plaintiffs' motion to compel the five named foreign resident executives of Toyota to attend deposition in California, subject to the following terms and conditions: "(a) plaintiff shall pay reasonable airfare (economy class, round-trip) and reasonably priced lodging for the deponents in California; and (b) the deposition of each deponent shall be one day in duration, from 10 a.m. to 5 p.m. (with a 10 minute break each hour and a one hour lunch break), at Toyota's counsel's Gardena, California offices." The trial court noted the dearth of case law directly on point[3] and stayed the matter to enable Toyota to seek writ review.

On June 28, 2010, Toyota filed the instant petition for writ of mandate. We issued an order to show cause and set the matter for hearing.

## ISSUE PRESENTED

The essential issue presented in this case is: does section 1989 prohibit the trial court from compelling a witness residing outside of California to travel to California for deposition or, as plaintiffs argue, does section 2025.260 vest the trial court with the discretionary authority (after applying the balancing factors set out in § 2025.260, subd. (b)), to compel a nonresident witness to travel to California for deposition?

## DISCUSSION

### 1. Standard of Review

The issues raised in this case must be resolved by the interpretation and application of the relevant provisions of the Code of Civil Procedure. These are issues of law which we review de novo. (*Suman v. BMW of North America,*

---

[3] The trial court noted on the record that "[t]he problem I'm having with this one is that the California Discovery Act doesn't say what should be done when a foreign national, an employee of a foreign corporation, is summoned to a deposition. . . . It doesn't say anywhere in there, in the text of the statute, that the employee of the foreign national is required to appear." Further, "I didn't find a single California case cited that says that there is statutory authority under the Civil Discovery Act to compel the deposition of a defendant foreign corporation employee in California." In its minute order granting plaintiffs' motion, the trial court also stated that "there is no case law that applies either provision, or for that matter, any provision of the [Civil Discovery] Act, to a case, such as this, where the court is asked to order the attendance at a deposition in this state of a foreign national who is an executive of a defendant foreign company."

*Inc.* (1994) 23 Cal.App.4th 1, 9 [28 Cal.Rptr.2d 133].) It is worth emphasizing that the trial court expressed considerable uncertainty about its decision in this matter and encouraged appellate court review by granting a limited stay of its order for that purpose.

We will first discuss the plain language of the statutes, which leads us to the conclusion that section 1989 prohibits the trial court from compelling a foreign resident to attend a deposition in California. Second, we will consider the legislative history of the relevant statutes, which confirms our conclusion. Finally, we will consider a case which reached a contrary conclusion (*Glass v. Superior Court* (1988) 204 Cal.App.3d 1048 [251 Cal.Rptr. 690] (*Glass*)) and reject its analysis.

### 2. *Section 1989 Applies to Deposition Witnesses*

Section 1989 provides that "[a] witness . . . is not obliged to attend as a witness before any court, judge, justice or any other officer, unless the witness is a resident within the state at the time of service." Section 1878 defines "witness" to mean "a person whose declaration under oath is received as evidence for any purpose, whether such declaration be made on oral examination, or *by deposition* or affidavit." (Italics added.) Moreover, a deposition can only take place before an "officer." (§ 2025.320.) Thus, section 1989 applies not only to those witnesses obliged to attend as witnesses in court proceedings, but those witnesses obliged to give testimony by deposition before deposition officers.

Additionally, we note that the Civil Discovery Act (§ 2016.010 et seq.) provides a means for taking depositions of non-California residents in the state or country of their residence. Section 2026.010, provides for depositions in other states, and section 2027.010 provides for depositions in foreign nations.

While section 2025.260, subdivision (a), provides for a court to permit a deposition of a party or officer, director, managing agent, or employee of a party at a place "that is more distant than that permitted under Section 2025.250 [(75 miles from the deponent's residence or within the county where the action is pending and within 150 miles of the deponent's residence)]," section 2025.260 *does not* provide for those depositions to be held at a place more distant than that permitted by section 1989. There is simply no conflict between the plain language of sections 1989 and 2025.260. Section 2025.260 *permits* depositions more than 75 (or 150) miles from a deponent's residence, but section 1989 *restricts* a deponent from being required to attend a California deposition if the deponent is not a California resident.

■ The trial court's order violates the terms of section 1989 by compelling the Japanese resident deponents attend as "witnesses" before an "officer" even though they were not "resident within the state at the time of service." It follows that the order compelling their attendance at deposition was error and must be reversed. (See *Amoco Chemical Co. v. Certain Underwriters at Lloyd's of London* (1995) 34 Cal.App.4th 554, 559 [40 Cal.Rptr.2d 80].)

### 3. *Legislative History Supports This Conclusion*

While we see no conflict in the plain language of sections 1989 and 2025.260, a review of the legislative history of *both* sections, taken together, confirms our interpretation.

#### a. *Originally, Section 1989 Applied to Depositions*

The legislative history of both sections together begins with the legislative history of section 1989 standing alone. The statute was originally enacted in 1872, and provided, "A witness is not obliged to attend as a witness before any [c]ourt, [j]udge, [j]ustice, or any other officer, out of the county in which he resides, unless the distance be less than 30 miles from his place of residence to the place of trial." It was subsequently amended four times to successively increase the mileage limitation to 50 miles (Stats. 1915, ch. 162, § 1, p. 330), 100 miles (Stats. 1935, ch. 257, § 1, p. 942), 150 miles (Stats. 1957, ch. 1560, § 1, p. 2918), and 500 miles (Stats. 1980, ch. 591, § 1, p. 1603).

Even though former section 1989 used language defining the mileage limitation as the distance between the witness's "residence" and the "place of trial," section 1989 applied to depositions as well as trials. (See *Pollak v. Superior Court* (1925) 197 Cal. 389, 393 [240 P. 1006] [requiring witnesses to attend depositions within 50 miles of their residences, noting that there is no language "circumscribing the territorial limits within which . . . depositions shall be taken, except those set forth in . . . section 1989 . . . ."].) Indeed, at the time section 1989 was initially adopted, section 1878, which defines "witness" to include a witness "whose declaration . . . is . . . made . . . by deposition," was simultaneously enacted.

As section 1989 was not amended, other than to increase the permitted mileage, from its enactment until 1981, we turn to the statutes governing depositions. We join this area of statutory development in 1957, when the taking of depositions was governed by former section 2019. As originally enacted (see Stats. 1957, ch. 1904, § 3, p. 3322), former section 2019 did not contain any mileage limit. Former section 2019, subdivision (a)(1) merely provided that notice of taking depositions " 'must be at least 10 days adding

also one day for every 100 miles of the distance of the place of examination from the residence of the person to whom the notice is given.' " (*Twin Lock, Inc. v. Superior Court* (1959) 52 Cal.2d 754, 760 [344 P.2d 788] (*Twin Lock*).) After the 1957 enactment of section 2019, section 1989 continued to apply to depositions. (*Twin Lock, supra,* 52 Cal.2d at p. 760 [1957 version of section 2019 "is not sufficient . . . to justify a conclusion that the Legislature thereby contemplated that witnesses could be compelled to attend the taking of depositions at distances greater than the maximum set forth by section 1989"]; see also *Kaiser Hawaiian Village Radio, Inc. v. Superior Court* (1959) 52 Cal.2d 890 [344 P.2d 793]; *Prisch v. Superior Court* (1959) 52 Cal.2d 889 [344 P.2d 794].)

### b. *The Deposition Statute Was Amended to Provide an Exception from Section 1989*

In 1959, former section 2019 was amended to include a distance limitation. A new subdivision (a)(4) was added to former section 2019, which limited the place of depositions to no more than 150 miles from the residence of a party-affiliated witness,[4] unless the party taking the deposition obtained an order under a balancing provision. (Stats. 1959, ch. 1590, § 2, pp. 3922–3923.) The balancing provision was new subdivision (b)(2).

As enacted in 1959, former section 2019, subdivision (b)(2) provided, "Notwithstanding Section 1989, the court may, upon motion on 10 days' written notice and for good cause shown, make an order requiring a deponent who is a party to the record of any civil action or proceeding or is a person for whose immediate benefit said action is prosecuted or defended or is at the time of the taking of the deposition an officer, director or managing agent of any such party or person to attend a deposition at a place more than 150 miles from the residence of such deponent. In granting or refusing such order, the court shall consider whether the moving party selected the forum, whether the deponent will be present at the trial, the convenience of the deponent, the suitability of discovery through a deposition by written interrogatories or other discovery methods, the number of depositions sought under this section, the expense to the parties of requiring the deposition to be taken within 150 miles of the residence of the deponent, the whereabouts of the deponent at the time the deposition is scheduled to be taken, and all other factors tending to show whether or not the interests of justice and the convenience of the parties and witnesses will be served by requiring the deponent to appear for his deposition at a place more than 150 miles from his residence. Such order may provide that the party desiring to take such deposition shall pay the reason-able expenses incurred by the deponent in attending such deposition and that he furnish an undertaking approved by the court to secure such payment

---

[4] At this point, the mileage limitation of section 1989 was also 150 miles.

and may contain such other terms and conditions as are equitable and just." (Stats. 1959, ch. 1590, § 2, pp. 3922, 3923–3924.)

Significant for our purposes is that this balancing provision began with the language, "[n]otwithstanding Section 1989." The language was both an acknowledgement that, until that point, section 1989's mileage limitation governed the taking of depositions (*Twin Lock, supra*, 52 Cal.2d at p. 761) and an amendment of the law to allow a court to exercise its discretion to order a deposition outside the mileage limitations of section 1989, when the balancing factors justified it (*Twin Lock, supra*, 52 Cal.2d at pp. 761–762).

The California Supreme Court had the opportunity to address the effect of this amendment in 1959, in *Twin Lock*. In that case, the defendant sought to obtain the Los Angeles depositions of certain officers and directors of the plaintiff Twin Lock corporation, which individuals were residents of New York. Although the 1959 amendment to former section 2019 had been enacted by the Legislature by the time of the Supreme Court's opinion, the defendant had noticed the depositions under the prior version of the law, which contained neither a balancing provision nor the "[n]otwithstanding Section 1989" language. Twin Lock unsuccessfully moved to vacate the notice, or to move the depositions to New York, on the basis of section 1989. The trial court indicated that sanctions would be imposed if Twin Lock did not comply with the deposition notices in California, and Twin Lock sought a writ of prohibition.

The Supreme Court agreed with plaintiff Twin Lock that its officers and directors residing in New York could not be compelled to appear for deposition in California. The high court explained, "Since section 1989 is by its terms applicable to the New York residents involved here, *defendants' position may be sustained only upon the theory that the enactment in 1957 of sections 2019* and 2034 [sanctions] *amounted to a partial implied repeal of section 1989*, which, as we have seen, has been a part of our statutes since 1872. We find nothing in the discovery and deposition provisions adopted in 1957 which discloses that the Legislature intended such a substantial departure from the long-established practice of limiting the territorial scope of the powers of a court to compel the attendance of witnesses." (*Twin Lock, supra*, 52 Cal.2d at p. 759, italics added.)

The *Twin Lock* court observed that although the 1957 enactment of former section 2019 did not alter the territorial limitations of section 1989, *the 1959 amendment to former section 2019 did authorize the trial court to compel the depositions in California of New York residents*. It was the 1959 amendment to former section 2019, subdivision (b)(2) that added the override proviso, "Notwithstanding Section 1989." Therefore, on remand, the defendants were

not "precluded from seeking an order, if they so desire, for the taking of the depositions of these witnesses pursuant to subdivision (b)(2) of section 2019 as amended in 1959." (*Twin Lock, supra,* 52 Cal.2d at p. 762.)

### c. Further "Notwithstanding Section 1989" Language Was Added to the Deposition Statute

In 1968, former section 2019 was amended to fully exempt depositions from the limitations of section 1989. (Stats. 1968, ch. 918, § 1, p. 1729.) Former section 2019, subdivision (a)(2) was modified to read: "*Notwithstanding Section 1989* and the distance provisions specified in paragraph (4) of this subdivision, the deposition, whether of a party or any other person, shall be taken only in the county of residence of the deponent or at a place not more than 75 miles from the residence of the deponent or, if the deponent is a party, in the county of place of trial when the place of deposition is less than 150 miles from the residence of the deponent, unless the court, pursuant to paragraph (1) or (2) of subdivision (b) of this section, otherwise orders." (Italics added.) Under the express language of the 1968 amendment, section 1989 no longer had application with respect to the location of a deposition in California. Both the mileage limit (former § 2019, subd. (a)(2)) and the balancing provision (former § 2019, subd. (b)(2)) specified that they applied "[n]otwithstanding Section 1989."[5]

Subsequent amendments of former section 2019 followed, but none of them would impact the "[n]otwithstanding Section 1989" language until 1986. The next legislative development of significance, however, was an amendment to section 1989.

### d. Section 1989 Changed from a Mileage Limitation to a Residency Limitation

In 1981, section 1989 was amended. As it existed prior to that amendment, section 1989 provided that a person was not obliged to attend as a witness "out of the county in which he resides, unless the distance be less than 500 miles from his place of residence to the place of trial." In 1981, section 1989 was amended to read as it now does, that a witness is not

---

[5] At this point, the mileage limitation of section 1989 was 150 miles. It could be argued that the "[n]otwithstanding Section 1989" language in former section 2019, subdivision (a)(2), was *narrowing* with respect to the location of a deposition of a nonparty deponent. That is, section 1989 would have permitted the deposition within 150 miles, but former section 2019, subdivision (a)(2), limited it to 75 miles for a nonparty witness. In contrast, the "[n]otwithstanding Section 1989" language was *broadening* with respect to the balancing provisions. Section 1989 would have limited the deposition to within 150 miles, but former section 2019, subdivision (b)(2) permitted it within a greater distance, if the balancing factors justified it.

obliged to attend as a witness "unless the witness is a resident within the state at the time of service." (Stats. 1981, ch. 184, § 3, p. 1106.) Thus, section 1989 was changed from a mileage-based limitation on witness compulsion to one that was residency based. In addition, the reference to "place of trial" was deleted. In other words, section 1989 simply provides that a witness cannot be compelled to testify before any court or officer *unless the witness is a resident of California.*

As originally introduced, the bill which amended section 1989 was intended to repeal it. (Assem. Bill No. 1884 (1981–1982 Reg. Sess.) § 3, as introduced Mar. 30, 1981.)[6] The bill was proposed by the California State Bar, which believed that, given "the development of travel capabilities over the years," even the then existing 500-mile limitation was artificial and unrealistic. (Assem. Com. on Judiciary, Bill Digest of Assem. Bill No. 1884 (1981–1982 Reg. Sess.) May 6, 1981, p. 2.)[7]

The bill's author received objections with respect to the impact of such repeal,[8] and the bill was modified to make the changes to section 1989 to make it read as it does today. As already noted, this amendment changed the nature of section 1989 from a mileage-based limitation to one based on state

---

[6] The bill would have also amended former section 2019 to strike the "[n]othwithstanding Section 1989" language. (Assem. Bill No. 1884 (1981–1982 Reg. Sess.) § 4, as introduced Mar. 30, 1981.)

[7] Committee and floor analyses are properly considered in determining a statute's meaning. (See, e.g., *Jevne v. Superior Court* (2005) 35 Cal.4th 935, 948 [28 Cal.Rptr.3d 685, 111 P.3d 954]; *Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 717 [3 Cal.Rptr.3d 623, 74 P.3d 726].)

[8] One such letter of opposition, received from Chrysler Corporation, noted that "[i]n this day and age of time consuming product lawsuits, key personnel of major national companies could find themselves spending a great deal of time in court instead of performing their assigned tasks for their employers." (A. E. Davis and Company, letter to Assemblyman Stirling, May 4, 1981, p. 1.) The letter went on to state that repealing section 1989 would "impose tremendous burdens on persons called to testify at trials or other proceedings by requiring them to travel unlimited distances at the mere whim of a party to a legal action. This measure does <u>not</u> require the party requesting attendance to first make a showing that the presence of the witness is necessary, or that alternative means of securing the testimony are not adequate or that the circumstances of the case warrant subjecting the witness to burdensome travel and absence from his own professional practice or employment. The bill excludes judicial participation in the exercise of authority to compel a witness to attend a trial over great distances and places sole discretion in the hands of the party to the lawsuit." (A.E. Davis and Company, letter to Assemblyman Stirling, *supra*, at p. 2.) Finally, the letter argued that the repeal bill "poses great time and expense problems to foreing [*sic*: foreign] corporations defending products cases in California" (*id.* at p. 3) and noted that present law provided "ample means for a party to discover and secure for trial all relevant evidence, including a witness'[s] testimony, and his deposition anywhere in the world." (*Ibid.*)

residency.[9] Former section 2019, relating to depositions, was untouched, and still provided (1) mileage-based limitations; (2) a balancing test to permit those limitations to be overridden; and (3) "Notwithstanding Section 1989" language. Thus, former section 2019 then provided a means by which a deposition could be taken in California of a non-California resident.

> e. *The Discovery Act of 1986 Eliminated the "Notwithstanding Section 1989" Language*

In 1986, the Civil Discovery Act was enacted as a comprehensive revision of California's discovery laws. Language governing the location of a deposition, which had previously been in former section 2019, was moved to former section 2025, subdivision (e). We compare the language ultimately enacted as former section 2025, subdivision (e) with the immediately preceding statutory language governing depositions in former section 2019. Former section 2025, subdivision (e)(1) provided as follows: "The deposition of a natural person, whether or not a party to the action, shall be taken at a place that is, at the option of the party giving notice of the deposition, either within 75 miles of the deponent's residence, or within the county where the action is pending and within 150 miles of the deponent's residence, unless the court orders otherwise pursuant to paragraph (3)." (Stats. 1986, ch. 1334, § 2, pp. 4700, 4709.) Former section 2025, subdivision (e)(2) provided similar mileage limitations for organizations as deponents. (Stats. 1986, ch. 1334, § 2, pp. 4700, 4709–4710.) While these mileage limitations are similar, but not identical, to those of former section 2019, subdivision (a)(2),[10] the most significant difference between the statutes is that former section 2019 subdivision (a)(2) began with "[n]otwithstanding Section 1989" (Stats. 1985, ch. 444, § 2, p. 1727), while former section 2025, subdivision (e)(1) and (2) contained no such language (Stats. 1986, ch. 1334, § 2, pp. 4700, 4709–4710).

Subdivision (e)(3) of former section 2025 provided a balancing provision to override the mileage limitations for a party or party-affiliated witness. It is similar to the balancing provision in former section 2019, subdivision (b)(2). Indeed, the two statutes identify the same list of factors in largely the same

---

[9] A report of the Senate Committee on the Judiciary on the amended bill noted, "To guard against the possibility that a court might decide that a California subpoena was valid outside the state, the bill provides that the witness would not be obliged to appear unless he was a resident within the state at the time of service." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1884 (1981–1982 Reg. Sess.) as amended May 26, 1981, p. 2.)

[10] At the time, former section 2019, subdivision (a)(2) limited nonparty depositions to the county of residence or within 75 miles, and party depositions to 150 miles if in the county of trial. (Stats. 1985, ch. 444, § 2, p. 1727.)

order.[11] (Compare Stats. 1986, ch. 1334, § 2, pp. 4700, 4710 with Stats. 1985, ch. 444, § 2, pp. 1727, 1729.) However, as with the mileage limitations themselves, the balancing provision in subdivision (e)(3) of former section 2025 no longer had the "[n]otwithstanding Section 1989" language of its immediate predecessor. (Compare Stats. 1986, ch. 1334, § 2, pp. 4700, 4710 with Stats. 1985, ch. 444, § 2, pp. 1727, 1729.)

It is significant to our analysis to determine how this language came to be enacted. That is, we must review the legislative history of the Civil Discovery Act to determine how former section 2025, subdivision (e) came to nearly restate the provisions of former section 2019, including the balancing provision which allows the mileage limitations to be bypassed, but without the "[n]otwithstanding Section 1989" language.

The bill as originally introduced[12] would have eliminated the balancing provision entirely. As originally proposed, former section 2025, subdivision (e)(1) and (2) set mileage limits, not alterable by the court, on the distance a deponent could be required to travel. (Assem. Bill No. 169 (1985–1986 Reg. Sess.) § 3, as amended Jan. 8, 1986.) This was in line with the recommendation of the State Bar-Judicial Council Joint Commission on Discovery. (State Bar-Judicial Council Joint Commission on Discovery, Proposed California Civil Discovery Act of 1986—Proposed Act and Reporter's Notes (Jan. 1986) p. 20.) The reporter's note indicates that the joint commission specifically proposed eliminating the balancing provision, then in former section 2019, subdivision (b)(2), because "neither parties nor third persons should be required to travel long distances for a deposition." (State Bar-Judicial Council Joint Commission on Discovery, Proposed California Civil Discovery Act of 1986—Proposed Act and Reporter's Notes, *supra*, at p. 32.)

The Los Angeles County Bar Association performed a lengthy analysis of the bill, agreeing with many of its provisions and disagreeing with others. (See Los Angeles County Bar Association, letter to Assemblyman Harris, Mar. 28, 1986, and attachment.) Specifically, the Los Angeles County Bar opposed "the deletion of . . . court authority" to "order a party deposition

---

[11] The individual factors were in the same order; only the catchall provision, allowing the consideration of any other factors, was reordered.

[12] The bill which ultimately became the Civil Discovery Act was initially proposed to amend other statutes, and eventually amended to revise the law of civil discovery. Thus, although we speak of the bill as originally introduced, we are actually concerned with the bill as amended by the Assembly—which was the first time the wholesale revision of the law of discovery was proposed. (See Assem. Bill No. 169 (1985–1986 Reg. Sess.) as amended Jan. 8, 1986.)

more than 150 miles from the deponent's residence."[13] (Los Angeles County Bar Association, letter to Assemblyman Harris, *supra*, at attachment, p. 11.)

Likely in response to concerns such as this, the Senate amended the bill to reinstate the balancing provision of former section 2019, subdivision (b)(2), but did not reinstate the "[n]otwithstanding Section 1989" language. (Assem. Bill No. 169 (1985–1986 Reg. Sess.) § 2, as amended June 25, 1986, pp. 19–20.) There is no doubt that former section 2025, subdivision (e)(3) was modeled on former section 2019, subdivision (b)(2). The same balancing factors were utilized in virtually the same order as former section 2019, subdivision (b)(2); omission of the phrase "[n]otwithstanding Section 1989" was the *only* substantive change made. While further amendments would subsequently be made prior to enactment of the Civil Discovery Act of 1986 (former § 2016 et seq.), this key reinstatement of the balancing provision without the "[n]otwithstanding Section 1989" language remained in the statute as ultimately enacted, and has been carried into section 2025.260, one of the statutes governing the location of depositions today.[14]

■ In determining the legislative intent behind the reenactment, in former section 2025, subdivision (e)(3), of the balancing provision of former section 2019, subdivision (b)(2) *without* the "[n]otwithstanding Section 1989" language, we are guided by the principle that "[w]hen the Legislature deletes an express provision of a statute, it is presumed that it intended to effect a substantial change in the law." (*Royal Co. Auctioneers, Inc. v. Coast Printing Equipment Co.* (1987) 193 Cal.App.3d 868, 873 [238 Cal.Rptr. 538]; see *Barajas v. City of Anaheim* (1993) 15 Cal.App.4th 1808, 1814 [19 Cal.Rptr.2d 764].) This principle applies specifically to the Civil Discovery Act. (See, e.g., *Sexton v. Superior Court* (1997) 58 Cal.App.4th 1403, 1409 [68 Cal.Rptr.2d 708] [applying Civil Discovery Act: "We find it significant the 1986 amendments of sections 2030, subdivision (*l*) and 2031, subdivision (*l*) did not include the earlier provision of section 2030 subdivision (a) . . . . The elimination of the pre-1986 law which gave authority to extend the time for making a motion to compel further answers indicates an intention by the Legislature not to vest any authority in the court to permit discovery that is not timely made"]; *Kohan v. Cohan* (1991) 229 Cal.App.3d 967, 971 [280 Cal.Rptr. 474] [applying Civil Discovery Act: "Former section 2034, subdivision (d), by its terms applied to 'willfully' failing to comply with discovery. That language has been omitted from section 2023, subdivision (b)(1)," so current version "does not require a misuse of the discovery process to be

---

[13] The concern apparently was that the alternative would require a large number of attorneys to travel a great distance to attend a deposition.

[14] In 2004, the Legislature renumbered the Civil Discovery Act sections. (Stats. 2004, ch. 182, § 23, p. 824.) As part of this renumbering, former section 2025, subdivision (e)(3) was renumbered as section 2025.260. We discuss the legal effect of this renumbering below.

willful" before sanctions are imposed]; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 530 [113 Cal.Rptr.3d 327, 235 P.3d 988] [where prior summary judgment statute required objections to be made " 'either in writing or orally' " and Legislature removed those words, "we can reasonably infer that the Legislature intended not to restrict the manner in which objections had to be presented"].) Thus, by *removing* the words authorizing the trial court to override section 1989, the Legislature presumptively intended to withdraw that authority which had previously existed.

Moreover, there is nothing in the legislative history to indicate that the "[n]otwithstanding Section 1989" language was omitted because it was determined that such language was no longer necessary. We again note the history of this amendment. Originally, the State Bar-Judicial Council Joint Commission on Discovery proposed eliminating trial court discretion to order a deposition beyond the mileage limitations entirely, and the Assembly Bill followed that proposition. After criticism arguing that the trial courts should retain such discretion, the Senate amended the bill to restore such discretion, but without the language permitting the discretion to be exercised in derogation of the limits imposed by section 1989. That the Legislature chose a middle course between the prior law of unlimited discretion and the State Bar-Judicial Council Joint Commission on Discovery's proposal of no discretion is not only reasonable, but likely.

Thus, the legislative history supports our conclusion based on the plain language of the statutes. The intentional omission of the "[n]otwithstanding Section 1989" language from the balancing test once again renders a trial court's orders regarding the location of depositions subject to the restrictions of section 1989.

### 4. *The* Glass *Decision Does Not Support Plaintiffs' Position*

Plaintiffs disagree with our conclusion and rely on *Glass, supra,* 204 Cal.App.3d 1048. Their reliance takes two forms. First, plaintiffs argue that the *Glass* decision itself controls the result in this case. Second, plaintiffs argue that the Legislature's renumbering of the discovery statutes following the *Glass* opinion constituted an implied adoption of this authority. We disagree with both contentions.

#### a. *The* Glass *Decision Itself*

Plaintiffs rely on *Glass, supra,* 204 Cal.App.3d 1048, an appellate court opinion decided 29 years after the Supreme Court decided *Twin Lock,* and two years after the Civil Discovery Act of 1986 had removed the "[n]otwith-standing Section 1989" language from the balancing provision. The issue in

*Glass* was whether the senior managers of Ameriana, a foreign corporation which had filed the action in California, could be required to attend depositions in this state.

In *Glass*, the petitioners sought to depose three senior members of Ameriana's management team in California pursuant to former section 2025, subdivision (e)(3). Ameriana opposed the motion on the ground that the deponents were Indiana residents and could only be deposed within 75 miles of their residences. *Glass* held the petitioners were entitled to an order compelling the depositions in California.

*Glass* reasoned that, because former section 2025, subdivision (e)(3) was "virtually identical" to the 1959 version of section 2019, subdivision (b)(2), which the Supreme Court held in *Twin Lock* was sufficient to overcome the restrictions of section 1989, the same result should apply. (*Glass, supra*, 204 Cal.App.3d at p. 1052.) Ameriana argued that the statutes were *not* "virtually identical," because the 1959 version of section 2019, subdivision (b)(2) included the "[n]otwithstanding Section 1989" language, but former section 2025, subdivision (e)(3) did not. The *Glass* court rejected that argument in a footnote, stating "[Ameriana] offer[s] no legislative history or other compelling support for [this] argument. Furthermore, it is more reasonable to assume the Legislature determined the phrase was superfluous in light of the 30-year-old *Twin Lock* decision, its revised discovery scheme and its stated goal of eliminating unnecessary cross-references to other discovery statutes." (*Glass, supra*, 204 Cal.App.3d at p. 1053, fn. 3.)

We find *Glass* unpersuasive for several reasons. First, we believe the *Glass* court misconstrued the Supreme Court's language in *Twin Lock*. The Supreme Court had found the presence of the "[n]otwithstanding Section 1989" language in the 1959 version of section 2019, subdivision (b)(2) to be "[o]f particular significance." (*Twin Lock, supra*, 52 Cal.2d at p. 761.) Given that, we cannot accept the *Glass* court's conclusion that former section 2025, subdivision (e)(3), which lacks such language, is "virtually identical" to the 1959 version of section 2019, subdivision (b)(2).[15] Second, we have before us the legislative history which was not before the *Glass* court; having reviewed that history at length, we have concluded that the omission of the "[n]otwithstanding Section 1989" language in 1986 was intentional, and must be given effect. Third, we disagree with the *Glass* court's supposition that the Legislature determined the "[n]otwithstanding Section 1989" language was "superfluous" in light of *Twin Lock*. *Twin Lock* found that language to be

[15] Indeed, the Supreme Court stated, in *Twin Lock*, "Of particular significance are the introductory words of subdivision (b)(2), 'Notwithstanding section 1989 . . .' This language clearly indicates the belief of the Legislature that, without benefit of the new provisions, section 1989 was controlling . . . ." (*Twin Lock, supra*, 52 Cal.2d at p. 761.)

important to its analysis; removing the language removes one of the underpinnings of *Twin Lock* and renders its discussion of the 1959 version of section 2019, subdivision (b)(2) inapplicable.[16]

*Glass* has been on the books for 22 years and has not been cited in any published decision.[17] We disagree with its analysis and decline to follow it.

> b. *The Subsequent Renumbering of the Discovery Act Has No Effect*

As already noted,[18] the Legislature renumbered the Civil Discovery Act in 2004, some sixteen years after the *Glass* decision. Plaintiffs argue that the Legislature's "reenactment" of the Civil Discovery Act in 2004 constituted legislative approval or adoption of the conclusions reached in *Glass*. We disagree.

■ There is no legislative acquiescence in an existing interpretation of the law by a subsequent statutory amendment which is merely nonsubstantive in nature. In order for the doctrine of legislative acquiescence to apply, the Legislature must have had the substantive topic before it. (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 505–506 [66 Cal.Rptr.2d 304, 940 P.2d 891].) In this case, the Legislature's reenactment of the Civil Discovery Act was *expressly* nonsubstantive. The California Law Revision Commission recommended a "nonsubstantive reorganization,"

---

[16] The *Glass* court also stated, without analysis, that former section 2025 acted "as an implied partial repeal of section 1989." (*Glass, supra*, 204 Cal.App.3d at p. 1051.) Plaintiffs adopt this argument and suggest that section 2025.260 constitutes an implied repeal of section 1989. Specifically, plaintiffs assert that section 2025.260 impliedly repealed section 1989 as to depositions. These circumstances do not remotely meet the test for implied repeal. "When one subsequently enacted statute limits the scope of an earlier statute, such limitation is designated a partial repeal." (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 573 [87 Cal.Rptr.3d 700, 198 P.3d 1109] (*Schatz*).)

Implied repeal is disfavored. " ' " '[A]ll presumptions are against a repeal by implication. . . .' " ' " (*Schatz, supra*, 45 Cal.4th at p. 573.) " ' "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " ' " (*Id.* at p. 573.)

As we have already noted, sections 1989 and 2025.260 are not at all inconsistent and can easily have concurrent operation. They yield a clear, coherent scheme that furthers the Legislature's intent to spare deponents from traveling long distances. Under it, a trial court can override the limitations set out in section 2025.250 but cannot override section 1989.

[17] *Glass* was mentioned, along with the *Twin Lock* decision, in a 1988 published decision, *Allee v. King* (Cal. App.), but that case was ordered not to be published by the Supreme Court on March 16, 1989.

[18] See footnote 14, *ante*.

explaining that "[t]he statutes governing civil discovery are logically organized, but are difficult to use due to their length and complexity." (Recommendation: Civil Discovery: Nonsubstantive Reform (Sept. 2003) 33 Cal. Law Revision Com. Rep. (2003) p. 793, fn. omitted.) The reorganization was intended to "enhance readability" and "assist [courts and·practitioners] in interpreting and following the law" by "[b]reaking the statute into shorter, more comprehensible segments." (*Ibid.*) In addition, the commission advised that the renumbering would simplify the legislative process, which requires reprinting the full text of a section in any bill amending it. (*Id.* at p. 794 & fn. 5.) The commission stated that it had "taken care to ensure that the proposed revisions are strictly nonsubstantive." (*Id.* at p. 796.) Further, the statute itself states that it was not intended to change the law.[19] (Stats. 2004, ch. 182, § 61, p. 942 ["Nothing in this act is intended to substantively change the law of civil discovery."]; *Lee v. Superior Court* (2009) 177 Cal.App.4th 1108, 1123, fn. 2 [99 Cal.Rptr.3d 712] [changes were " 'not intended to have any substantive effect' "].)

Given this legislative history, we reject plaintiffs' argument that this nonsubstantive renumbering had the effect of placing the Legislature's imprimatur on the *Glass* case. The renumbering had no such effect.

### 5. *Conclusion*

The plain language of the statutory scheme and the legislative history of that language fully support the conclusion that a trial court cannot order a nonresident to appear at a California deposition.[20] Plaintiffs' arguments to the contrary are unpersuasive. We will therefore grant Toyota's petition for writ of mandate.

---

[19] See also, e.g., Senate Committee on Judiciary, Analysis of Assembly Bill No. 3081 (2003–2004 Reg. Sess.) June 1, 2004, pages 1–2 ("This bill would effect a non-substantive reorganization of the Sections to make the statutes more user-friendly and facilitating amendment and sound development of the law.").

[20] This conclusion is not limited to individual witnesses, but also applies to a court order directing that a party produce for deposition a specifically named nonresident witness (e.g., an employee, officer or director of a corporation). In *Twin Lock*, the notices of deposition were directed to the party-affiliated witnesses; when they did not comply, sanctions were sought against the party (Twin Lock) itself. When Twin Lock relied on section 1989, defendants responded "that section 1989 applies only to witnesses whose attendance may be compelled by subpoena and whose refusal to respond may be punished as contempt." (*Twin Lock, supra*, 52 Cal.2d at p. 758.) The Supreme Court rejected the argument, saying that section 1989 "contains no language limiting its application to cases involving a subpoena or contempt proceedings, and the word 'obliged' as used in the section is sufficiently broad to preclude use of indirect as well as direct methods of compelling a witness to attend. There can be no doubt that a witness, such as each of the persons whose depositions are sought here, who is a director, officer, or managing agent of a party to an action will be under considerable coercion to attend whenever his corporate employer is placed under the severe sanctions authorized by

## DISPOSITION

Toyota's petition for writ of mandate is granted. Upon remand, the trial court is directed to vacate its order of June 15, 2010, which granted plaintiffs' motion to compel and to enter a new and different order denying such motion. Toyota shall recover its costs in this appellate proceeding.

Klein, P. J., and Kitching, J., concurred.

**KLEIN, P. J.,** Concurring.—I concur in the lead opinion and its holding that irrespective of Code of Civil Procedure section 2025.260,[1] which authorizes a court to permit the deposition of a party or officer, director, managing agent or employee of a party at a location more distant than that permitted under section 2025.250, the superior court is precluded by section 1989 from ordering a *nonresident* to appear at a California deposition. But I have concurred in the court's opinion because I agree the present discovery statutory scheme compels the conclusion reached in that opinion. I write separately, however, to express my concern the current statutory scheme is inadequate and inappropriate in today's era of globalization. It is my view the Legislature should promptly address this issue.

Section 1989 was originally enacted in 1872. It has now become an archaic limitation on discovery. Further, because section 1989 provides a *nonresident of California* is not obliged to attend as a witness in this state, it applies *not only* to residents of foreign countries, but also to residents of other states in these United States. The Legislature should address this subject at the earliest opportunity in order to update the law and to bring California in line with other jurisdictions.

1. *Residency Requirement of Section 1989 Is Inconsistent with California's Intent to Exercise Broadest Possible Jurisdiction Over Nonresidents*

It should be noted that section 410.10, commonly known as California's "long-arm statute" (*Integral Development Corp. v. Weissenbach* (2002) 99 Cal.App.4th 576, 583 [122 Cal.Rptr.2d 24]), provides a court of this state

---

[the discovery statutes]." (52 Cal.2d at p. 759.) The court concluded that "[t]he imposition of sanctions on the party would thus cause the witness to be 'obliged' to attend, within the meaning of [section 1989]." (*Ibid.*) As section 1989 still contains the "obliged" language, the rationale of *Twin Lock* on this point still applies. We express no opinion, however, as to whether our analysis or the conclusions we have reached in this opinion would or should extend or apply to a court order made pursuant to section 2025.230 which provides for the circumstance where ". . . the deponent named is not a natural person . . . ."

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." Section 410.10 manifests an intent by California "to exercise the broadest possible jurisdiction, limited only by constitutional considerations." (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445 [128 Cal.Rptr. 34, 546 P.2d 322]; accord, *Archdiocese of Milwaukee v. Superior Court* (2003) 112 Cal.App.4th 423, 435 [5 Cal.Rptr.3d 154].)

Given the Legislature's authorization in section 410.10 of the broadest possible exercise of jurisdiction over nonresidents, it is difficult to understand section 1989's stringent residency requirement for the attendance of witnesses in this state.

### 2. *Deposition of Nonresidents in Other Jurisdictions*

#### a. *Federal Courts*

Federal courts routinely order the depositions of foreign corporate executives on American soil, pursuant to Federal Rules of Civil Procedure, rule 30(b)(6) (28 U.S.C.).[2] As stated in *Custom Form Manufacturing, Inc. v. Omron Corp.* (N.D.Ind. 2000) 196 F.R.D. 333 (*Custom Form*), "When a foreign corporation is doing business in the United States, is subject to the court's jurisdiction, and has freely taken advantage of our federal rules of discovery, exceptions to the general rule on the location of depositions are often made. Under such facts, the foreign corporation's agents are frequently compelled for deposition on American soil. *See In re Honda American Motor Co., Inc. Dealership Relations Litigation*, 168 F.R.D. 535, 541–42 (D.Md.1996) (requiring agents of a Japanese corporate defendant to be deposed in Maryland); *M & C Corporation v. Erwin Behr GmbH & Co.*, 165 F.R.D. 65, 68 (E.D.Mich.1996) (requiring a German corporate defendant's agents to appear for depositions in Detroit); *R.F. Barron Corp. v. Nuclear Fields (Australia) Pty., Ltd.*, 1992 WL 212602, *2 (N.D.Ill.1992) (requiring depositions of Dutch and Australian defendants in Chicago); *Roberts v. Heim*, 130 F.R.D. 430, 439–40 (N.D.Cal.1990) (compelling the appearance of a Swiss defendant for deposition in San Francisco). *The bottom line is that a*

---

[2] Rule 30(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.) states: "Notice or Subpoena Directed to an Organization. In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization. This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules." (Italics omitted.)

*foreign corporation, subject to the in personam jurisdiction of this court, can be ordered under Rule 30(b)(6) to produce its officers, directors or managing agents in the United States to give deposition testimony. Work v. Bier,* 106 F.R.D. 45, 52 (D.D.C.1985)." (*Custom Form, supra,* 196 F.R.D. at p. 336, italics added.)

### b. *State Courts*

Various state courts likewise have ordered foreign nationals to attend depositions in this country. (See, e.g., *State ex rel. Bunker Resource Recycling & Reclamation, Inc. v. Howald* (Mo.Ct.App. 1989) 767 S.W.2d 76 [Canadian resident, who was corporation's managing agent, could be required to give deposition in Mo.]; *D'Agostino v. Johnson & Johnson* (1990) 242 N.J. Super. 267 [576 A.2d 893] [Swiss executive required to appear in N.J.]; *In re Turner* (Tex.Ct.App. 2008) 243 S.W.3d 843, 848 [trial court had discretion to order Hong Kong resident's deposition to take place in Tex.].)

*Ex Parte Toyokuni & Co., Ltd.* (Ala. 1998) 715 So.2d 786 (*Toyokuni*), a wrongful death action against a Japanese corporation, is instructive. There, the Alabama Supreme Court upheld an order requiring Japanese corporate representatives to travel to Alabama for deposition. *Toyokuni* stated depositions of nonresident corporate defendants ordinarily should be taken at the corporation's principal place of business, but " '[t]here may be circumstances that would justify the taking of a deposition somewhere other than the corporation's principal place of business.' " (*Id.,* at p. 788.)[3]

In upholding the lower court's discovery order, *Toyokuni* reasoned: "The trial court is in a better position than an appellate court to weigh the circumstances in a particular case and to determine whether the deposition should be taken somewhere other than the corporation's principal place of business. . . . [¶] The circuit judge was faced with a difficult situation in this case and, under the circumstances, we conclude that he did not abuse his discretion." (*Toyokuni, supra,* 715 So.2d at p. 789, citation omitted.)

The *Toyokuni* court explained, "The action is pending in the Circuit Court of Mobile County, and Toyokuni's counsel and the administrator's counsel

---

[3] " ' "The Alabama Rules of Civil Procedure permit very broad discovery . . . . However, [Rule] 26(c) [thereof] recognizes that the right of discovery is not unlimited, and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not allow an arbitrary limit on discovery, but instead vests the trial court with discretion in the discovery process. The question on review then becomes one of whether, under all of the circumstances, the trial court has abused this discretion. In exercising its discretion, the trial court should be guided by the spirit of the rules, which is to permit full discovery so as to save time, effort and money and to expedite the trial with a view to achieving substantial justice for each litigant." ' " (*Toyokuni, supra,* 715 So.2d at p. 788.)

practice law in the city of Mobile, located in Mobile County. In addition, the Stultses, who are also defendants, have filed a cross-claim against Toyokuni, seeking to recover for property damage, and their counsel practice in Mobile. The administrator argues that it would be less expensive for Toyokuni representatives to travel to Mobile than for the other parties and their counsel to travel to Japan; all parties are represented by counsel in Mobile. [Citation.] It could be a greater financial burden to all parties to conduct the deposition at a location other than the forum." (*Toyokuni, supra,* 715 So.2d at p. 789.)

*Toyokuni* reasoned, *"Moreover, Japan's system of discovery is very different from our 'open discovery' system. Under Japanese law, judicial officers conduct all pretrial questioning of witnesses and discovery is basically limited to voluntary depositions. See In re Honda American Motor Co., Inc. Dealership Relations Litigation,* [*supra,* 168 F.R.D. at p. 538]. *It could be unfair to make the administrator conduct the deposition under Japan's strict discovery procedures, especially since, at the same time, Toyokuni would have access to our more open discovery methods. An attempt to compel discovery pursuant to our rules on Japanese soil could infringe foreign judicial sovereignty.* [Citation.] Therefore, the circuit judge did not abuse his discretion in declining to order that the deposition take place in Japan." (*Toyokuni, supra,* 715 So.2d at p. 789, italics added.)

*Toyokuni* further recognized that holding the deposition in Japan could "thwart the circuit court's control of this case. Conducting the deposition in the forum would allow the circuit court to have greater control over the discovery process if disagreements arose. [Citation.] . . . If a dispute arises over the right to discover certain information, or if the defendant refuses to cooperate, by failing to answer certain questions or to produce certain documents, then, with the deposition taking place in Mobile, the circuit court will be in a much better position to resolve any conflict. *Having the deposition take place in Mobile and thus allowing the circuit court to exercise its control will serve the clear interest that the United States in general and Alabama in particular have in maintaining the integrity of our judicial system and in exercising the jurisdiction of this state and this nation over persons whose products are distributed in the United States and in Alabama. See In re Honda American Motor Co.,* 168 F.R.D. at 539." (*Toyokuni, supra,* 715 So.2d at pp. 789–790, italics added.)

### 3. *Policy Considerations*

This case does not implicate the sovereignty of foreign countries. The policy question which the Legislature should review is whether California courts should have the discretionary authority to require a corporate defendant's foreign officers, directors, managing agents or employees to appear for deposition in California.

Amicus curiae in support of Toyota Motor Corporation claim that deposition access to foreign corporate party employee witnesses would disrupt business operations and would impose an "oppressive discovery burden" on every international corporation whose products are sold in California. However, case law in other jurisdictions (see, *ante*) reflects that corporate defendants are capable of producing foreign employees for deposition, and that trial courts are presumably capable of managing such discovery in a fair manner.

The policy reasons articulated in *Toyokuni* pinpoint the need for the Legislature to reexamine section 1989. We are now living in a global economy. Permitting the deposition in California of nonresident employees of foreign corporations doing business here would help maintain the integrity of our judicial system by enabling the superior court to exercise control over discovery in the event litigation should arise. It would also enable California to exercise its jurisdiction over foreign corporations whose products are distributed here.

Another factor militating in favor of conducting depositions in California, rather than overseas, is that the procedures for conducting depositions abroad may thwart discovery. As stated in *Toyokuni*, "Japan's system of discovery is very different from our 'open discovery' system. Under Japanese law, judicial officers conduct all pretrial questioning of witnesses and discovery is basically limited to voluntary depositions. *See In re Honda American Motor Co. Inc. Dealership Relations Litigation*, [*supra*,] 168 F.R.D. [at p.] 538 . . . . It could be unfair to make the [plaintiff] conduct the deposition under Japan's strict discovery procedures, especially since, at the same time, [defendant] would have access to our more open discovery methods." (*Toyokuni, supra*, 715 So.2d at p. 789.)

Additionally, if the depositions are conducted in this forum, in the event of disputes arising during the depositions, such as if the witnesses refuse to cooperate, the superior court would be in a much better position to resolve any conflict.

Further, it may well be more economical for plaintiffs to bring individual deponents from abroad, rather than for a team consisting of plaintiffs, their attorneys, a stenographer, a videographer and a translator, to travel abroad for depositions.

Moreover, the current state of affairs, in which Toyota's foreign executives cannot be required to appear for deposition in California, creates an uneven playing field for American business. As discussed in *Toyokuni*, deposition procedures in Japan are far more restrictive. (*Toyokuni, supra*, 715 So.2d at

p. 789.) If foreign corporations doing business here are able to shield their personnel from effective discovery, they would have an unfair advantage over domestic automakers and other competitors, who are subject to extensive discovery in this country.

For all these reasons, the Legislature should revisit the relationship of section 1989 to section 2025.260 at the earliest opportunity.

On July 28, 2011, the opinion was modified to read as printed above.