[No. B079477. Second Dist., Div. One. Apr. 17, 1995.]

AMOCO CHEMICAL COMPANY et al., Plaintiffs and Respondents, v. CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON, ENGLAND et al., Defendants and Appellants.

---

## COUNSEL

Hancock, Rothert & Bunshoft, Barry L. Bunshoft, Deborah A. Pitts, Vito C. Peraino and Candace A. Younger for Defendants and Appellants.

Paul, Hastings, Janofsky & Walker, Ronald M. Oster and Keith A. Meyer for Plaintiffs and Respondents.

---

## OPINION

**VOGEL (Miriam A.), J.**—We hold in this case that section 1989 of the Code of Civil Procedure means what it says—a witness is not obliged to appear in court in California unless he is a resident of the state at the time of service.[1] For this reason, a notice to attend trial and bring documents (§ 1987, subds. (b), (c)) served on the custodian of records of a nonresident party is void and unenforceable.

### BACKGROUND

Six lawsuits were filed against Amoco Chemical Company and Amoco Reinforced Plastics Company for damages caused by Amoco's allegedly defective design and manufacture of "Techite" pipe. Somewhere along the line, Amoco asked its insurers, Certain Underwriters at Lloyd's of London (Lloyd's) and Various British and European Insurance Companies (the

---

[1]Unless otherwise stated, all section references are to the Code of Civil Procedure.

Companies),[2] to pay Amoco's costs and settlements associated with the underlying Techite actions. The carriers declined and Amoco sued for declaratory relief, breach of contract and bad faith, asking for about $40 million in general damages, plus punitive damages. The carriers answered and discovery ensued on all issues except Defendants' financial condition.

Trial was set for September 20, 1993. Twenty-five days before trial (on August 26), Amoco served on Lloyd's and the Companies (by service on their California attorneys) a "Notice to Appear and to Produce Documents At Trial." (§ 1987, subds. (b), (c).)[3] The notice required the "attendance of [Defendants'] Custodian of Records, or such other officers, directors or managing agents" responsible for maintaining documents described in an exhibit to the notice, all of which were related to Defendants' financial condition and net worth. Amoco wanted these documents to prove its claim for punitive damages. (Civ. Code, § 3295; *Adams* v. *Murakami* (1991) 54 Cal.3d 105 [284 Cal.Rptr. 318, 813 P.2d 1348].) Prior to trial, neither Lloyd's nor the Companies objected or otherwise responded to Amoco's notice.[4]

---

[2]Approximately 100 separate entities are referred to collectively by the parties as Various British and European Insurance Companies or, for convenience, as the Companies.

[3]Subdivision (b) of section 1987 provides as follows: "In the case of the production of a party to the record of any civil action or proceeding or of a person for whose immediate benefit an action or proceeding is prosecuted or defended or of anyone who is an officer, director, or managing agent of any such party or person, the service of a subpoena upon any such witness is not required if written notice requesting the witness to attend before a court, or at a trial of an issue therein, with the time and place thereof, is served upon the attorney of that party or person. The notice shall be served at least 10 days before the time required for attendance unless the court prescribes a shorter time. If entitled thereto, the witness, upon demand, shall be paid witness fees and mileage before being required to testify. The giving of the notice shall have the same effect as service of a subpoena on the witness, and the parties shall have such rights and the court may make such orders, including the imposition of sanctions, as in the case of a subpoena for attendance before the court."

As relevant, subdivision (c) of section 1987 provides that "[i]f the notice specified in subdivision (b) is served at least 20 days before the time required for attendance, or within such shorter time as the court may order, it may include a request that the party or person bring with him or her books, documents or other things. . . ."

[4]When a notice to attend trial includes a request to bring books or documents (as quoted in fn. 3, *ante*), subdivision (c) of section 1987 provides that, "[w]ithin five days [after the notice is served], or such other period as the court may allow, the party or person of whom the request is made may serve written objections to the request or any part thereof, with a statement of grounds. Thereafter, upon noticed motion of the requesting party, accompanied by a showing of good cause and of materiality of the items to the issues, the court may order production of items to which objection was made, unless the objecting party or person establishes good cause for nonproduction or production under limitations or conditions. The procedure of this subdivision [regarding documents] is alternative to the procedure provided by Sections 1985 and 1987.5 in the cases herein provided for, and no subpoena duces tecum

During a series of pretrial conferences, the court and counsel discussed Amoco's notice to attend trial and produce documents. Amoco suggested that, as an alternative, it would accept a "reasonable stipulation" from Defendants as to their financial condition, to "spare them the burden of having to assemble documents or whatever else would be required." Defendants, in turn, explained they did not intend to comply with the notice because all of their agents were overseas and not amenable to the court's subpoena power. From their perspective, it was Amoco's problem, not theirs, that Amoco had failed to take depositions in Europe.[5] The trial court asked the parties to brief the issue.

Amoco's brief (presented as a motion to compel the production of documents and the attendance of a witness) explained its need for the documents (to prove Defendants' financial condition), contended Defendants had waived all objections to the notice to attend trial by failing to object within the time provided by section 1987, subdivision (c), and insisted the notice to attend was proper because Defendants were before the court. In response, Defendants relied on section 1989, which provides that "[a] *witness, including a witness specified in subdivision (b) of Section 1987, is not obliged to attend as a witness before any court, judge, justice or any other officer, unless the witness is a resident within the state at the time of service.*" (Italics added.)

A hearing was held, after which the trial court granted Amoco's motion, ordered Defendants to produce all of the documents within five court days or, in the alternative, to stipulate to their "net worth or financial condition." Despite requests from Defendants, the trial court refused to state specifically whether it was holding that it had jurisdiction to order an out-of-state witness to appear. As the court put it, "Well, I don't feel that I have to go through a question and answer session with you or anyone else. If my ruling was insufficient, I'm sure somebody will let me know one of these days."

Lloyd's opted for the alternative approach, stipulating that "[e]ach syndicate defendant at Lloyd's of London . . . has the financial resources to pay any judgment entered against it, including any amount of punitive or exemplary damages awarded against it in this action." The Companies, however,

shall be required. [¶] Subject to this subdivision, *the notice herein provided shall have the same effect as is provided in subdivision (b) as to a notice for attendance of that party or person.*" (Italics added.)

[5]Had Amoco pursued the matter of Defendants' financial condition during pretrial discovery, it could have selected the appropriate place for depositions of Lloyd's and the Companies' custodians of records (§§ 2025, subd. (e), 2026), obtained an order from the court permitting inquiry into Defendants' financial condition (Civ. Code, § 3295, subd. (c)), and requested production of the desired financial documents (§ 2025, subd. (h)).

refused to produce the documents and refused to enter a stipulation about their financial condition.

Amoco then filed a motion for sanctions against the Companies, which was granted on October 13, 1993, as follows: "[The Companies] are to pay to [Amoco,] as and for sanctions, under [section] 128.5 . . . , the sum of $1,000 per company per day commencing O[ctober] 5, 1993, and continuing each calendar day until all documents are received; the Court finds that [the Companies] have failed to comply with the [Court's] prior order which was to have been completed by O[ctober] 5, 1993."

The day after the sanction order was issued, about 25 of the 100 Companies produced financial information, at which point the trial court said it would consider reducing the sanctions. On October 15, the trial court modified its October 13 order as follows: "As to the prior order for sanctions, as to any [C]ompanies in violation of [Amoco's] notice to produce, under [section] 128.5 . . . , the Court amends its order of 10-13-93 in that the $1,000 per day per company is only for the first day (10-5-93) and thereafter from 10/6/93 through 10/15/93, the sanctions are $10,000 per calendar day, jointly and severally, and then from 10/16/93 sanctions are reduced to $5,000 per calendar day, jointly and severally, until all financial data order[ed] produced is received. The Court will also consider an instruction [during the punitive damages stage of the bifurcated trial] as to any remaining [C]ompanies in noncompliance with the order to produce."

During the second phase of the trial, the court carried out its threat by instructing the jury as follows: "Amoco and [Lloyd's] have stipulated that each syndicate defendant at Lloyd's of London has the financial resources to pay any judgment entered against it, including any amount of punitive or exemplary damages awarded against it in this action. [¶] Certain of the Various British and European Insurance Companies which are defendants in this case have failed to produce documents evidencing their current financial condition and net worth. Amoco is thereby relieved of any requirement regarding proof of the financial condition of those defendants as a prerequisite to an award of punitive or exemplary damages, and you do not need to consider the financial condition of these defendants in determining an amount of punitive or exemplary damages that will deter these defendants from future misconduct."

The jury thereafter returned a punitive damage award of $386 million, which the trial court later reduced to $71 million. The monetary sanctions against the Companies total an additional $452,000. This appeal involves

only the sanction orders and the Companies are the only appellants. The final judgment is the subject of another appeal (*Amoco Chemical Company* v. *Certain Underwriters at Lloyd's of London* (B083904, app. pending)) which is not before us at this time.

## DISCUSSION

■ The Companies contend the sanction orders must be reversed because the trial court had no jurisdiction to compel the attendance of an out-of-state witness and, therefore, no jurisdiction to compel the production of documents under section 1987. We agree, and therefore do not reach their other claims of error.[6]

Under section 1987, subdivision (b), a notice to attend serves as a substitute for a subpoena when one party wants another party to appear at trial. "The giving of the notice shall have the same effect as service of a subpoena on the witness, and the parties shall have such rights and the court may make such orders . . . as in the case of a subpoena for attendance before the court." (*Ibid.*) The notice to attend, if served within the specified time limits, may include a request that the party "bring with him or her books, documents or other things." (§ 1987, subd. (c); see fn. 3, *ante*.) This notice "shall have the same effect as is provided in subdivision (b) as to a notice for attendance of that party or person." (§ 1987, subd. (c).) But (and in this case it is a very big "but") the geographical reach of the notice to attend is explicitly limited by section 1989: "A witness, including a witness specified in subdivision (b) of Section 1987, is not obliged to attend as a witness before any court . . . unless the witness is a resident within the state at the time of service."

It follows ineluctably that the notice to attend was void on its face, that no objection was required, and that the orders must be reversed. (*Twin Lock, Inc.* v. *Superior Court* (1959) 52 Cal.2d 754, 761-762 [344 P.2d 788] [no form of compulsion, including sanctions, may be used by the court to compel a party who is an out-of-state resident to come to California]; see also *Prisch* v. *Superior Court* (1959) 52 Cal.2d 889 [344 P.2d 794]; *Liberty Bank* v. *Superior Court* (1925) 195 Cal. 766, 773-774 [235 P. 995] [an order compelling a party's agent to appear beyond the court's jurisdictional limits under section 1989 is void]; *Dreher* v. *Superior Court* (1932) 124 Cal.App. 469, 476 [12 P.2d 671].)

---

[6]We summarily reject Amoco's contention that the appeal should be dismissed because it is taken from the October 13 order, not the October 15 order. (*Neff* v. *Ernst* (1957) 48 Cal.2d 628, 634 [311 P.2d 849]; *Kellett* v. *Marvel* (1936) 6 Cal.2d 464, 471 [58 P.2d 649].)

We reject Amoco's suggestion that, independent of the court's inability to compel the attendance of an out-of-state party, the notice to produce documents is valid. By its own terms, section 1987, subdivision (c), makes the right to request documents contingent upon the requesting party's right to request the appearance of a party according to the procedure provided in subdivision (b). In other words, subdivision (b) authorizes a notice to attend in lieu of a subpoena when the witness is a party or an officer, director or managing agent of a party. Subdivision (c) is ancillary thereto, and merely provides that when a party is entitled to use the notice to attend permitted by subdivision (b), that party does not have to bother with a subpoena duces tecum to require the witness to bring documents—the request for documents may simply be added to the notice to attend. But there is nothing in subdivision (c) to suggest it is capable of standing alone. (§ 1987, subd. (c) [if "*the notice specified in subdivision (b)* is served at least 20 days before the time required for attendance . . . , *it* may include a request *that the party or person bring with him or her* books, documents or other things"], italics added.)[7]

Moreover, it makes no sense to read subdivision (c) of section 1987 as a free standing authorization to obtain the production of records at trial. Keeping in mind that the notice to attend procedure applies to trial and not to depositions or other discovery devices, what good would it do to have the documents at trial without the custodian of records or some other person competent to authenticate them? (See § 1987, subd. (b) [the notice is to be used for "requesting the witness to attend before a court, or at a trial of an issue therein"].)[8]

In an effort to avoid this result, Amoco cites *Boal* v. *Price Waterhouse & Co.* (1985) 165 Cal.App.3d 806 [212 Cal.Rptr. 42]. In *Boal,* the plaintiff

---

[7]For similar reasons, we reject Amoco's contention that the Companies were obligated to object to the notice to attend within the time and in the manner provided in subdivision (c) of section 1987. When a notice to attend is served pursuant to subdivision (b) of section 1987 and, ancillary thereto, the witness is asked to bring documents, the statute provides that, "[w]ithin five days thereafter, or such other period as the court may allow, the party or person of whom the request is made may serve written objections to the request or any part thereof, with a statement of grounds. Thereafter, upon noticed motion of the requesting party, accompanied by a showing of good cause and of materiality of the items to the issues, the court may order production of items to which objection was made, unless the objecting party or person establishes good cause for nonproduction or production under limitations or conditions." (§ 1987, subd. (c).)

By its plain language, the objections contemplated by section 1987, subdivision (c) are to *documents*, not to the attendance at trial of a *witness.* And it is clear that a witness's refusal to attend because he is entitled to the protection afforded by section 1989 need *not* be preceded by any objection. Under section 1989, a nonresident witness served with a notice to attend is, simply, "not obliged to attend."

[8]At oral argument, Amoco suggested that we impose on the Companies some sort of good faith obligation to voice their objection at a time when Amoco could cure the defect in its

sued his former employer (Price Waterhouse, a national firm) to recover retirement benefits. Before trial, the plaintiff served a Los Angeles partner of Price Waterhouse with a subpoena duces tecum calling for the production of the retirement records of 13 former Price Waterhouse partners. At trial, the subpoena was quashed. Division Four of our court reversed, rejecting Price Waterhouse's contention that the subpoena was never properly served since its custodian of records was in New York: "The contention is ridiculous. Truly, if a subpoena is served on a nonparty, and requires the personal appearance of a custodian not resident in California, other means must be resorted to secure the documents; but where the documents sought are in the presence of a party, over whom the trial court has personal jurisdiction, that *party* may be required, by service on it in California, to produce the documents wherever situated." (*Id.* at pp. 810-811.)

We have several problems with *Boal*. *First*, no authority whatsoever is cited for its holding and there is no mention of section 1989 (which in one form or another has been on the books since 1872). *Second*, we cannot tell from the opinion where the documents were located ("the documents sought are in the presence of a party," whatever that means). The most that can be said is that the custodian of records was in New York. *Third*, assuming the documents were with the custodian, *Boal* involved a subpoena duces tecum (§ 1985 et seq.), not a notice to attend trial under section 1987, and production of the documents without the custodian might have sufficed if someone in Los Angeles was competent to authenticate the documents.[9] *Fourth*, *Boal* (at least by implication) acknowledges the inability of the court to compel the attendance of an out-of-state *witness*, even one who is a party. *Fifth*, to the extent someone might read *Boal* to support the order before us, we respectfully disagree with its holding and refuse to follow it. Such an

notice to appear. There are at least three problems with this approach. First, there is no such obligation in the statute (see fn. 7, *ante*). Second, we do not see how the Companies' attorney could take such action without violating her obligations to her own clients, to whom she owed her undivided loyalty. Third, it would not have accomplished anything—even assuming Amoco had time to obtain the documents by some other means (e.g., in the manner permitted by section 1987.3), the documents would not be admissible without someone there to authenticate them—and there is nothing in the record before us to suggest the presence or availability of such a person.

[9]See and compare section 1987.3: "When a subpoena duces tecum is served upon a custodian of records . . . *and his personal attendance is not required by the terms of the subpoena*, Section 1989 shall not apply." (Italics added.) Section 1989, by comparison, expressly applies to section 1987, subdivision (b). (See Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 1994) ¶ 1:58, p. 1-14 [suggesting that section 1987.3 "probably" applies only when the nonresident custodian is employed by a business entity subject to California jurisdiction; otherwise, there would be no way for the court to enforce compliance with a subpoena served on a nonresident]). Perhaps the court in *Boal* was thinking in terms of section 1987.3.

interpretation would by judicial fiat erase section 1989 from the Code of Civil Procedure. That is not our function.

Despite the exhaustive pretrial discovery conducted in this case, Amoco elected to forgo its pretrial right to inquire about the Companies' financial worth (Civ. Code, § 3295, subd. (c)), choosing instead to wait until trial. Whatever merit there might be to that approach in other cases, it was an unfortunate choice in this one. As at least one practice guide has observed, the geographical limitations of section 1989, particularly as applied to section 1987, make "it all the more important to take the depositions of nonresident parties and party-affiliated witnesses." (Wegner et al., Cal. Practice Guide: Civil Trials and Evidence, *supra*, ¶¶ 1:101-1:103, p. 1-23.)

For these reasons, the sanction orders against the Companies must be reversed.

### DISPOSITION

The sanction orders of October 13 and 15, 1993, against the Companies are reversed in their entirety, with directions to the trial court to enter new orders denying sanctions against the Companies. The Companies are awarded their costs of appeal.

Ortega, Acting P. J., and Masterson, J., concurred.

A petition for a rehearing was denied May 10, 1995, and respondents' petition for review by the Supreme Court was denied July 13, 1995. Lucas, C. J., did not participate therein.