[No. F067687. Fifth Dist. Feb. 18, 2015.]

KEN R. BAKER, Plaintiff and Respondent, v.
ALFONSE CASTALDI et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

†It is ordered that the opinion be certified for publication in the Official Reports with the following exceptions: "Pretrial Proceedings," "First Phase Trial Evidence," and "Proceedings After the First Phase of Trial" and footnote 20.

## COUNSEL

Cyril L. Lawrence for Defendants and Appellants.

Silveira, Mattos & Lewis and Weldon J. Mattos, Jr., for Plaintiff and Respondent.

## OPINION

## POOCHIGIAN, J.—

### INTRODUCTION

Respondent and plaintiff Ken R. Baker sued Theresa Castaldi[1] and appellant Alfonse Castaldi for allegedly stealing antiques he owned. Plaintiff[2] sought punitive damages. Trial proceeded to a first phase[3] on March 25, 2013, and a punitive damages calculation phase on August 6, 2013. The first phase dealt with liability, compensatory damages and whether plaintiff was entitled to punitive damages. The second phase dealt with the calculation of the punitive damages.

After the first phase completed, the court found both Theresa and Alfonse jointly and severally liable for conversion. On May 20, 2013, months before the punitive damages phase began, a document entitled "judgment" was filed. The "judgment" indicated that judgment was against both defendants, jointly and severally, and set forth $610,500 in compensatory damages plus interest and costs. The "judgment" went on to state that the court "finds by a preponderance of the evidence[4] that both defendants Alfonse Castaldi and Theresa Castaldi have acted with malice and with oppression toward plaintiff Ken Baker warranting an award of punitive damages to be assessed at a separate trial. . . ."

Several notices of appeal were filed in superior court, each identifying only the May 20, 2013, "judgment" as the subject of the appeal.

We conclude that the May 20, 2013, "judgment" was not a final, appealable judgment. Since "[i]t is the duty of an Appellate Court on its own

---

[1] Theresa Castaldi was a defendant in the trial court proceedings, but is not an appellant in this appeal.

[2] We refer to Ken R. Baker as "plaintiff" to distinguish him from appellant Annette Baker, trustee of the Ann Jay Trust.

[3] The trial court's purported judgment issued on May 20, 2013, refers to the punitive damages phase as a "separate trial." The common nomenclature is to refer to the punitive damages proceedings as the second "phase" of the trial, rather than an entirely separate trial. (E.g., *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 913 [85 Cal.Rptr.2d 909, 978 P.2d 67]; *Holdgrafer v. Unocal Corp.* (2008) 160 Cal.App.4th 907, 919 [73 Cal.Rptr.3d 216]; *Amoco Chemical Co. v. Certain Underwriters at Lloyd's of London* (1995) 34 Cal.App.4th 554, 558 [40 Cal.Rptr.2d 80]; *Rivera v. Sassoon* (1995) 39 Cal.App.4th 1045, 1047 [46 Cal.Rptr.2d 144]; *Herrick v. Quality Hotels, Inns & Resorts, Inc.* (1993) 19 Cal.App.4th 1608, 1615–1616 [24 Cal.Rptr.2d 203].) We will follow this practice.

[4] To obtain punitive damages, a plaintiff must prove oppression, fraud or malice by "clear and convincing evidence," not a mere preponderance of the evidence. (Civ. Code, § 3294, subd. (a); *Westrec Marina Management, Inc. v. Jardine Ins. Brokers Orange County, Inc.* (2000) 85 Cal.App.4th 1042, 1050 [102 Cal.Rptr.2d 673].)

motion to dismiss an appeal from an order which is not appealable" (*Chapman v. Tarentola* (1960) 187 Cal.App.2d 22, 25 [9 Cal.Rptr. 228]), we dismiss the appeal.

## PRETRIAL PROCEEDINGS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## FIRST PHASE TRIAL EVIDENCE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## PROCEEDINGS AFTER THE FIRST PHASE OF TRIAL*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISCUSSION

I. *The Appeal Must Be Dismissed*

a. *The Appealability of a Judgment Is Jurisdictional*

██ As a preliminary matter we must determine whether the May 20, 2013, "judgment" is indeed a final, appealable judgment. Neither party raised this issue in their initial briefs. However, "[t]he appealability of the judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed. [Citations.]" (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297 [50 Cal.Rptr.2d 493].) "It is the duty of an Appellate Court on its own motion to dismiss an appeal from an order which is not appealable. [Citation.]" (*Chapman v. Tarentola, supra,* 187 Cal.App.2d at p. 25.) We afforded the parties the opportunity to file supplemental briefs regarding the appealability of the May 20, 2013, "judgment."[18]

" 'In civil matters, our appellate jurisdiction is limited to the judgments and orders described in Code of Civil Procedure section 904.1. Only *final*

---

*See footnote, *ante*, page 218.

[18] In his supplemental brief, plaintiff now contends the May 20, 2013, "judgment" was interlocutory and not appealable.

judgments are appealable under that statute . . . .' [Citations.]" (*Papadakis v. Zelis* (1992) 8 Cal.App.4th 1146, 1149 [11 Cal.Rptr.2d 411], original italics.)

 b. *The May 20, 2013, "Judgment" Was Interlocutory and Not Appealable*

█ A judgment "is the final determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577.) Generally, a judgment is final " 'where no issue is left for future consideration except the fact of compliance or noncompliance with' " the order. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 [107 Cal.Rptr.2d 149, 23 P.3d 43] (*Griset*).) " '[B]ut where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the . parties, the decree is interlocutory.' [Citations.]" (*Id.* at pp. 698–699.)

The present appeal is from a single purported "judgment": the May 20, 2013, "judgment." That document states that judgment is made against defendants, jointly and severally, and sets forth $610,500 in compensatory damages plus interest and costs. However, the document also states that the court finds plaintiff is entitled to punitive damages in an amount "to be assessed at a separate trial."

█ Under the general test in *Griset*, it seems quite clear that the May 20, 2013, "judgment" was interlocutory. While a final judgment leaves no issue left for future consideration except compliance (*Griset, supra,* 25 Cal.4th at p. 698), the May 20, 2013, "judgment" did leave open an issue for future consideration: the amount of punitive damages. Determining the amount of punitive damages at a court trial seems quite clearly to be a type of " 'judicial action on the part of the court' " that is " 'essential to a final determination of the rights of the parties . . . .' " (*Ibid.*) As a result, the May 20, 2013, "judgment" was interlocutory.[19]

 c. *Appellants' Contentions Are Unavailing*

█ Appellants argue that if the May 20, 2013, "judgment" was not final, "then respondent should not have been able to enforce that judgment until a final order issued." That may well be. But even if we accept appellants' contention that the subsequent enforcement orders were erroneous, that would not confer appealability on the May 20, 2013, "judgment." The merits of an

---

[19] The fact that appellants attempted to file a third notice of appeal identifying the August 2013 "Amended Judgment" suggests they may have been aware of the deficiencies in the two prior notices of appeal.

appeal cannot confer jurisdiction where it is lacking.[20] (*In re Frederick E. H.* (1985) 169 Cal.App.3d 344, 348 [215 Cal.Rptr. 171].)

■ Appellants argue the May 20, 2013, "judgment" "implicitly" refers to itself as the final judgment. But "[a] paper filed in an action does not become a judgment merely because it is so entitled; it is a judgment only if it satisfies the criteria of a judgment. . . ." (*City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 10 [88 Cal.Rptr.2d 863]; cf. *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1107 [162 Cal.Rptr.3d 516, 309 P.3d 838] ["allowing the parties and trial court to designate a substantively interlocutory judgment as final and appealable—would be inconsistent with the one final judgment rule"].)[21]

■ Appellants also cite the "death knell" doctrine but fail to explain why it would apply here. "The death knell doctrine permits the appellate court to review an order denying a motion to certify a class when it is unlikely the case will proceed as an individual action. [Citation.]" (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1098 [118 Cal.Rptr.2d 862].) The doctrine is " 'a tightly defined and narrow concept' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 760 [122 Cal.Rptr.3d 153, 248 P.3d 681]), and we strongly doubt it has any application outside the class action context. Regardless, it is undisputed that the doctrine does not apply unless there is an order that

---

20 * . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[*] See footnote, *ante*, page 218.

[21] "[I]t is the substance and effect of an adjudication that is determinative, not the form of the decree. [Citation.]" (*Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 801 [70 Cal.Rptr.3d 434].) Even if it were determined that appellants were reasonably lured into thinking the May 20, 2013, "judgment" was appealable due to an error on the part of the trial court, it would not alter our conclusion. The "appealability of the judgment or order is jurisdictional . . ." (*Marsh v. Mountain Zephyr, Inc., supra*, 43 Cal.App.4th at p. 297), and jurisdictional defects in the notice of appeal cannot be excused on equitable grounds. (See *In re Marriage of Eben-King & King* (2000) 80 Cal.App.4th 92, 116 [95 Cal.Rptr.2d 113].)

By analogy, consider the deadlines for filing a notice of appeal. (Cal. Rules of Court, rules 8.104, 8.108(b).) Those deadlines are jurisdictional and will bar an appeal even where the trial court has arguably led a litigant astray.

"*Weznoski* v. *Central Banking System, Inc.* (1987) 43 Cal.3d 539 [237 Cal.Rptr. 167, 736 P.2d 753] . . . demonstrates the rule's rigidity. There the trial court allowed a second motion for new trial after denying the first. The Supreme Court held the trial court lost jurisdiction to do anything in the case after ruling on the first motion, making proceedings on the second a nullity. The time for appeal ran from the denial of the first motion, and the appellant was not entitled to relief from a tardy filing even if the trial court erroneously led the parties to believe it could rule on the second motion. [Citation.]" (*Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489 [39 Cal.Rptr.2d 802].)

"amounts to a de facto final judgment for absent plaintiffs." (*Id.* at p. 759.) The May 20, 2013, "judgment" is not such an order.

 Finally, appellants ask that we find any objections to the appealability of the May 20, 2013, "judgment" were "waived." Jurisdiction cannot be conferred upon an appellate court by waiver. (*In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1216 [92 Cal.Rptr.3d 17].)

### d. *Liberal Construction of Appellants' Notices of Appeal Does Not Save the Invalid Appeal*

 In arguing that we may review the judgment debtor and probate orders, appellants cite the rule that a " 'notice of appeal shall be liberally construed in favor of its sufficiency [citation] . . . .' " (*Vibert v. Berger* (1966) 64 Cal.2d 65, 67 [48 Cal.Rptr. 886, 410 P.2d 390].)

Appellants argue the rule of liberal construction applies in this case, because their notices of appeal were, at worst, "premature." They submit any flaw in the notices of appeal may be disregarded under *Groves v. Peterson* (2002) 100 Cal.App.4th 659, 666, footnote 2 [123 Cal.Rptr.2d 164] (*Groves*) and *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1263, footnote 3 [39 Cal.Rptr.3d 634] (*Bardin*). In *Groves* and *Bardin*, the appellants were attempting to challenge the trial court's sustaining of a demurrer. However, the notices of appeal incorrectly identified the order sustaining demurrer rather than correctly identifying the judgment dismissing the complaint pursuant to the sustained demurrer. In each case, the Court of Appeal excused the flaw. (*Bardin, supra,* 136 Cal.App.4th at p. 1263, fn. 3; *Groves, supra,* 100 Cal.App.4th at p. 666, fn. 2.)

We need not decide whether we agree with *Bardin* and *Groves*, because they are distinguishable. The notices filed in the present case do not present " 'a mere misdescription' of the judgment" (*Glassco v. El Sereno Country Club, Inc.* (1932) 217 Cal. 90, 92 [17 P.2d 703]), but instead clearly and correctly identify a single order or judgment: the May 20, 2013, "judgment." Appellants would have us construe the notices of appeal, which identify one order, as a premature appeal from an entirely different order entered months later, which awarded $600,000 in punitive damages for the first time. But it is well "beyond liberal construction" to view an appeal from one order as an appeal from a "further and different order." (*Russell v. Foglio* (2008) 160 Cal.App.4th 653, 661 [73 Cal.Rptr.3d 87].) "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed." (*Shiver, McGrane & Martin v. Littell* (1990) 217 Cal.App.3d 1041, 1045 [266 Cal.Rptr. 298].) "The rule favoring appealability in cases of

ambiguity cannot apply where there is a clear intention to appeal from only . . . one of two separate appealable judgments or orders. [Citation.]" (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 47 [269 Cal.Rptr. 228].)

### e. *Our Conclusion Is Consistent with Analogous Precedent*

Our conclusion that the May 20, 2013, "judgment" is not appealable is consistent with our decision in *Plaza Tulare v. Tradewell Stores, Inc.* (1989) 207 Cal.App.3d 522 [254 Cal.Rptr. 792] (*Plaza Tulare*). That case involved a dispute over the interpretation of a written lease. (*Id.* at p. 523.) The trial was bifurcated (Code Civ. Proc., § 598) with the issue of lease interpretation to be tried separately from damages. (*Plaza Tulare, supra,* at p. 523.) The respondents prevailed at the first trial regarding lease interpretation. (*Ibid.*) The appellants purported to appeal from the order adjudicating the issues presented at the first trial. (*Ibid.*)

We noted that "[a] positive verdict of liability in [a bifurcated] trial merely has the same status as a partial verdict or finding. [Citation.]" (*Plaza Tulare, supra,* 207 Cal.App.3d at p. 524.) Consequently, we held that the adjudication of the issues in the first trial was an "interlocutory judgment" and could not be appealed. (*Ibid.*) As a result, we dismissed the appeal. (*Id.* at p. 525.)[22]

■ Appellants seek to distinguish *Plaza Tulare,* arguing that the present case did not involve a "stipulated bifurcation." We see no legal significance to this distinction. Appealability of an adjudication turns on its "substance and effect." (*Otay River Constructors v. San Diego Expressway, supra,* 158 Cal.App.4th at p. 801.) The procedural history leading up to the adjudication is relevant insofar as it informs this inquiry. But whether the "bifurcation" in this case was stipulated to or not is irrelevant because it does not change the fact that the May 20, 2013, "judgment" left unresolved an issue essential to the final determination of the rights of the parties.

The appeal must be dismissed. (Cf. *Plaza Tulare, supra,* 207 Cal.App.3d at pp. 524–525.)

---

[22] In this case, liability, compensatory damages, and entitlement to punitive damages were tried in the first phase of trial and the amount of punitive damages was tried in the second phase, whereas in *Plaza Tulare,* liability was tried first and all damages were scheduled to be tried second. (*Plaza Tulare, supra,* 207 Cal.App.3d at p. 523.) This difference is inconsequential because whether the damages are compensatory or punitive, their calculation is an issue essential to "the final determination of the rights of the parties" (Code Civ. Proc., § 577). Consequently, any order that leaves the completion of trial on compensatory or punitive damages for the future is not a final judgment.

## CONCLUSION

██ We understand the result in this case may seem harsh, as appellants are prevented from obtaining review of several unusual orders now and possibly ever.[23] However, "[t]his court is without power to bestow jurisdiction on itself . . . ." (*Mid-Wilshire Associates v. O'Leary* (1992) 7 Cal.App.4th 1450, 1455 [9 Cal.Rptr.2d 862].) "Appellate jurisdiction is solely within the province of our Legislature . . ." (*ibid.*), and we are not at liberty to modify the standards for appealability (*In re Baycol Cases I & II, supra*, 51 Cal.4th at p. 759, fn. 5; see *Kurwa v. Kislinger, supra*, 57 Cal.4th at p. 1107).

## DISPOSITION

Appellants' request for sanctions under California Rules of Court, rule 8.882(c)(1)(B) is denied. The appeal is dismissed. The parties shall bear their own costs.

Gomes, Acting P. J., and Franson, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 17, 2015, S225892.

---

[23] Though we may not review the orders in this appeal, appellants are not necessarily without remedy. If appellants are correct that the various orders are void on their face, the orders " 'may be set aside on motion, at any time . . . by the court which . . . made the order[s].' [Citations.]" (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19 [84 Cal.Rptr.2d 715].) And, in some circumstances, a trial court's order denying such a motion is appealable. (See *Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884].)