Filed 12/20/24  Saydman v. Aegis Security Insurance Company CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRENT SAYDMAN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>    Defendant and Respondent. | G063209<br><br>(Super. Ct. No. 30-2019-01096355)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nathan R. Scott, Judge. Affirmed.

Law Offices of Dale Washington and Dale E. Washington for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, John Hochhausler and Mark R. Wilson for Defendant and Respondent.

Appellant Brent Saydman and his mother, Shirley Saydman,[1] brought this action against defendant Aegis Security Insurance Company (Aegis), which provided the homeowner's insurance policy for his mother's house. Following a multiday bench trial, the trial court ruled in favor of appellant on certain aspects of his breach of contract and bad faith causes of action, awarding appellant $25,787.50, and against appellant on other issues. It entered a "judgment" on April 4, 2023 (April 2023 judgment), but that document noted attorney fees would be tried by posttrial motion. The trial court subsequently awarded appellant attorney fees under *Brandt v. Superior Court* (1985) 37 Cal.3d 813 (*Brandt*) and entered an amendment to the April 2023 judgment on October 17, 2023.

Appellant argues the trial court made three errors in its ruling prior to the April 2023 judgment. We disagree with Aegis's argument that the appeal is untimely as to those issues. However, appellant's arguments as to these issues fail because he has not provided an adequate record on appeal. Appellant also challenges the trial court's calculation of *Brandt* fees, but we conclude the trial court did not abuse its discretion. We therefore affirm.

FACTUAL AND PROCEDURAL HISTORY

In September 2019, appellant and his mother filed a complaint against Aegis and Elmco Insurance, Inc. (Elmco).[2] According to the complaint, appellant lived with and provided care for his mother (who was over 65 years old and severely disabled), and in 2019, his mother purchased a homeowner's insurance policy from Aegis. The complaint alleged two claims

---

[1] Shirley Saydman passed away while the case was pending in the trial court.

[2] Elmco settled prior to trial.

were made to Aegis related to a burglary and water damage. The complaint further alleged certain disputes and wrongdoing regarding the two claims, and it asserted causes of action for declaratory relief (against Aegis), negligence (against Elmco), breach of contract (against Aegis), insurance bad faith (against Aegis), and financial elder abuse (against Aegis and Elmco).

Following a multiday bench trial, the trial court issued a statement of decision on February 1, 2023. No reporter's transcript for the trial is in the record on appeal. The trial court ruled in favor of appellant on certain aspects of the third cause of action (breach of contract) and fourth cause of action (bad faith) and awarded him $25,787.50, but it found in favor of Aegis on the first cause of action (declaratory relief) and fifth cause of action (elder abuse) and the punitive damages claim. Appellant objected to the statement of decision, which the trial court overruled.

In March 2023, appellant filed a motion for attorney fees and costs under *Brandt*, seeking $264,130 as baseline attorney fees, $132,065 as a 1.5 multiplier, and $19,125.75 as costs. On April 4, 2023, Aegis filed its opposition. Aegis argued appellant was entitled to *Brandt* fees but appellant calculated them incorrectly "based on a hypothetical hourly fee agreement instead of the actual 40% contingent fee agreement." Aegis included a copy of appellant counsel's contingency fee agreement.

On April 4, 2023, the trial court entered the April 2023 judgment and the clerk sent a notice of entry of judgment to the parties. This "judgment" listed the money awarded to appellant on the third and fourth causes of action, "[c]osts per memorandum of costs[,]" and indicated "[p]er [pretrial] stipulation attorney[] fees, if any, to be tried to the court by [posttrial] motion."

3

In June 2023, appellant filed a reply to his motion for attorney fees and costs. In August 2023, after receiving supplemental briefing and holding a hearing (no reporter's transcript for this hearing is in the record on appeal), the trial court awarded appellant $2,718 in attorney fees and $12,097.75 in costs. On October 17, 2023, the trial court issued a document entitled "amendment to judgment to award costs and attorney[] fees." (Capitalizations omitted.) This document noted the April 2023 judgment was amended to award appellant attorney fees of $2,718 and costs of $12,097.75.

On October 19, 2023, appellant filed a notice of appeal.

DISCUSSION

"'[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.]' [Citation.] 'This means that an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.'" (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 619–620 (*L.O.*).) "'[W]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]' [Citation.] Likewise, "'[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived.'"'" (*Id.* at p. 620.)

"In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided." (*Foust v. San*

4

*Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186.) "When no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters*. To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*).)

Appellant opted to proceed without a reporter's transcript, and his briefing includes factual assertions that were not supported by citation to the record on appeal (nor were they found to be supported by evidence in our review of the record on appeal). We have disregarded factual assertions in appellant's brief that are unsupported by the record on appeal. We also indicate below where the failure to provide an adequate record on appeal forecloses appellant's arguments.

## I.

## THE APRIL 2023 JUDGMENT

*A. Appealability*

As an initial matter, we must address Aegis's argument we lack jurisdiction as to issues pertaining to the April 2023 judgment because the October 19, 2023 notice of appeal was untimely as to that judgment. (See *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 221–222 (*Torres*); Cal. Rules of Court, rule 8.104, subds. (a)(1) & (b).) Appellant counters the April 2023 judgment was not a final, appealable judgment because *Brandt* fees were not finally decided until the amendment to the judgment on

5

October 17, 2023. Only then, according to appellant, was there a final, appealable judgment. Appellant is correct.

"California is governed by the 'one final judgment' rule which provides 'interlocutory or interim orders are not appealable, but are only "reviewable on appeal" from the final judgment.'" (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1292–1293.) "A judgment 'is the final determination of the rights of the parties in an action or proceeding.' [Citation.] Generally, a judgment is final "'where no issue is left for future consideration except the fact of compliance or noncompliance with'" the order. [Citation.] "'[B]ut where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory."'" (*Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 223 (*Baker*).) "'[A] paper filed in an action does not become a judgment merely because it is so entitled; it is a judgment only if it satisfies the criteria of a judgment.'" (*Id.* at p. 224.)

Aegis points to *Torres*, which recognized "[i]t is well settled . . . that '[w]here the judgment is modified merely to add costs, attorney fees and interest, the original judgment is not substantially changed and the time to appeal is therefore not affected.'" (*Torres, supra,* 154 Cal.App.4th at p. 222.) *Torres* further noted, "'[w]hen a party wishes to challenge both a final judgment *and* a postjudgment costs/attorney fee order, the normal procedure is to file *two separate appeals:* one from the final judgment, and a second from the postjudgment order.'" (*Ibid.*) However, we are not persuaded this principle applies here. *Torres* addressed attorney fees under a city resolution, not *Brandt* fees. (*Torres, supra,* at p. 221.)

Importantly, *Brandt* fees are different than the typical attorney fees awarded under contract or statute. "California adheres to the American

6

rule, 'which provides that each party to a lawsuit must ordinarily pay his own attorney fees.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 806 (*Cassim*).) "In *Brandt*, [the California Supreme Court] established a notable exception to this rule for insurance bad faith cases. [It] explained that if an insurer fails to act fairly and in good faith when discharging its responsibilities concerning an insurance contract, such breach *may result in tort liability for proximately caused damages.*" (*Ibid.*, italics added.) As *Brandt* explained, "[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense. The attorney[] fees are an economic loss—damages—proximately caused by the tort. [Citation.] These fees must be distinguished from recovery of attorney[] fees *qua* attorney[] fees, such as those attributable to the bringing of the bad faith action itself. What we consider here is attorney[] fees that are recoverable as damages resulting from a tort in the same way that medical fees would be part of the damages in a personal injury action." (*Brandt, supra,* 37 Cal.3d at p. 817.)

Thus, the April 2023 judgment was not a final, appealable judgment; while the April 2023 judgment resolved liability and some damages, it did not fully resolve tort damages because it did not decide *Brandt* fees. (See *Plaza Tulare v. Tradewell Stores, Inc.* (1989) 207 Cal.App.3d 522, 524 ["'[w]here the trial is bifurcated and the issue of damages remains to be tried, appeal from the interlocutory judgment of liability is premature"]; *Baker, supra,* 235 Cal.App.4th at p. 223 [concluding appeal from document labeled "'judgment'" was interlocutory where liability and compensatory damages had been determined, but the amount of punitive damages would be assessed at separate trial].) The April 2023 judgment then

7

became a final, appealable judgment after the trial court amended such in October 2023 to include its determination of *Brandt* fees.

### *B. Appellant's Arguments Fail Because the Record Is Inadequate*

Appellant argues the trial court erred by (1) not awarding him $14,336.91 for damages from vandalism, (2) deducting $4,462.12 for depreciation from the water damages, and (3) not awarding him the policy limits for additional living expenses (ALE). While appellant asserts no reporter's transcript is necessary because the issues he raises appear on the face of the record, we disagree and conclude his arguments fail because the record is inadequate.

Appellant's first argument relates to the trial court's finding he failed to "meet his burden to show Aegis breached the policy by failing to pay a covered property damage (vandalism) claim." Appellant contends the trial court erred in not awarding him $14,336.91, which was the amount for purported vandalism damage. However, the trial court rejected appellant's claim for multiple reasons, including because "he provided no expert testimony on what specific property damage was caused by the vandalism, what specific repairs were needed to repair the damage, or the reasonable value of those repairs." Appellant's argument raises a challenge to the sufficiency of the evidence, which is foreclosed by the inadequate record.[3] (See *Fain, supra,* 75 Cal.App.4th at p. 992.)

---

[3] Appellant cites to a document in the record he calls an "undated spread sheet" and a document that appears to be an estimate for $14,336.91, and he claims this amount was undisputed and thus Aegis "had the burden." But without a reporter's transcript, there is no testimony about these documents, nor is there a record of what other evidence may or may not have existed as to the alleged vandalism damages.

Appellant's second argument relates to the trial court's finding appellant "met his burden to show Aegis breached the policy by failing to timely pay a covered property damage (water damage) claim" and "[t]he loss amount was $17,067.88, which represents the $24,030 appraisal award, minus $4,462.12 in depreciation that plaintiff did not timely claim and minus the $2,500 deductible." Appellant asserts the trial court erred in deducting $4,462.12 for depreciation. Appellant argues depreciation was irrelevant under the policy when repairs were done and "[i]t was undisputed the water damage was repaired at the time of appraisal as Aegis presented the photos and unsuccessfully argued the water damage repair was full of upgrades[.]" Appellant's only citation to the record about the repairs being complete at the time of the appraisal is a picture that he calls "photo of finished kitchen[,]" which does not prove his contention and, without a reporter's transcript, the record does not contain what testimony may have been given at trial as to this picture and repairs. Again, appellant's argument attacks the sufficiency of the evidence, which we cannot review on this inadequate record.[4]

Appellant also argues the appraisal provision in the policy is ambiguous because the terms "amount of loss" and "value" are not defined and should be construed against the insurer such that he "is entitled to the better measure—the undepreciated value by plain meaning also as an

---

[4] Appellant also asserts error was "caused by allowing the Aegis expert to say what the law is—that the insured needed to 'claim' the depreciation, prove up the repairs had been accomplished." To the extent appellant is attempting to argue the trial court erred in allowing an expert to testify, the record is inadequate given there is no transcript of the expert's testimony.

ambiguous provision."[5] Appellant fails to provide cogent argument as to how this supposed ambiguity affected the trial court's findings or judgment, and thus, the argument is forfeited. (See *L.O., supra,* 96 Cal.App.5th at p. 620.) To the extent appellant is suggesting the appraisers found depreciation could not be deducted,[6] the record does not indicate appellant made this argument to the trial court, and thus, it is forfeited. (See *Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1012.) In any event, the record is inadequate to meaningfully evaluate that argument.

Appellant's third argument relates to the trial court's finding appellant "met his burden to show Aegis breached the policy by failing to pay some" ALE. The trial court found appellant "testified credibly that he incurred $4,000 to install a working kitchen in his garage in December 2019" and awarded him $5,269.04 on the ALE claim (which was $4,000 plus certain interest). Appellant argues the trial court should have awarded the policy limit for ALE, which he says is more than $100,000. He appears to argue more ALE was justified because a reservation of rights letter was wrongfully

---

[5] The appraisal provision in the policy states, "[i]f you and we fail to agree as to the actual cash value or the amount of loss, then, on the written request of either, each shall select a competent and disinterested appraiser . . . . The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item . . . . An award in writing, so itemized, of any two when filed with this company shall determine the amount of the actual cash value and loss." (Boldface omitted.)

[6] The appraisal award found "the value of the claimed water damage loss to be" $24,030. However, the appraisal award also noted it "is made without consideration of any coverage issues, policy limits, deductible amounts and prior payments by insurer, non-covered items or other provisions of the above-described policy which might affect the existence and/or amount of the insurer's liability."

issued and caused him to preserve the damaged kitchen. But appellant's argument disregards the trial court's finding appellant failed to "offer his hotel receipts into evidence or provide expert testimony on the reasonable value of alternate lodging." The trial court further found he failed to "meet his burden to show Aegis breached the contract by failing to pay ALE for a longer period to accommodate his heart condition" because he "did not give Aegis any information from a physician explaining why his heart condition required him to leave the house" and "[h]e offered no such expert testimony at trial." This challenge again would require us to examine the sufficiency of the evidence, but the record is inadequate to do so.

## II.

### *BRANDT* FEES

Appellant argues the trial court erred in calculating *Brandt* fees. We review the trial court's decision awarding *Brandt* fees for abuse of discretion. (*Cassim, supra,* 33 Cal.4th at p. 805.)

As discussed, *ante*, *Brandt* permits an insured to recover certain attorney fees as damages proximately caused by the bad faith tort. (*Brandt, supra,* 37 Cal.3d at p. 817.) "Because, however, entitlement to attorney fees as compensatory damages is premised on an insured's need to hire an attorney to vindicate his or her contractual rights under an insurance policy, [the California Supreme Court] placed a critical limitation on the amount of fees recoverable. 'The fees recoverable, however, may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract. Fees attributable to obtaining any portion of the plaintiff's award which exceeds the amount due under the policy are not recoverable.'" (*Cassim, supra,* 33 Cal.4th at p. 807, italics omitted.)

11

Relevant here, the California Supreme Court has addressed how to calculate *Brandt* fees in the context of contingency fees. As *Cassim* explained, the trier of fact must "determine the percentage of the legal fees paid to the attorney that reflects the work attributable to obtaining the contract recovery." (*Cassim, supra,* 33 Cal.4th at p. 812.) "To determine the percentage of the legal fees attributable to the contract recovery, the trial court should determine the total number of hours an attorney spent on the case and then determine how many hours were spent working exclusively on the contract recovery. Hours spent working on issues jointly related to both the tort and contract should be apportioned, with some hours assigned to the contract and some to the tort. This latter figure, added to the hours spent on the contract alone, when divided by the total number of hours worked, should provide the appropriate percentage." (*Ibid.*)

*Cassim* also provided an example of the calculation: "Suppose the compensatory damages are $3,594,000. Suppose further that the attorney and the client have a 40 percent contingent fee agreement. The total legal fee for the compensatory award is thus 40 percent of $3,594,000, or $1,437,600. Now suppose counsel spent 1,500 hours on the case, and can prove this breakdown: 200 hours on issues related solely to the contract, 500 hours on issues relevant to both the contract and the tort, and 800 hours on issues related solely to the tort. The trial court could reasonably conclude that half the hours spent on the joint contract/tort issues are fairly attributable to the contract (i.e., half of 500 hours, or 250 hours), and thus 30 percent of the hours worked (200 hours plus 250 hours, divided by 1,500 total hours) is attributable to the contract recovery. Thirty percent of the total legal fee (30 percent of $1,437,600) is $431,280. This is the amount a trial court should

12

award as *Brandt* fees in this hypothetical situation." (*Cassim, supra,* 33 Cal.4th at p. 812.)

Here, the trial court did not abuse its discretion in calculating *Brandt* fees. The trial court started with $10,315, which it found was the total amount of legal fees that appellant was liable for (40% of the total compensatory damages recovery of $25,787.50). The trial court then calculated the percentage of the contingency fee attributable to the contract recovery. It noted the total number of hours spent on the case was 455.6, and of those hours, approximately 121.7 were spent working on the contract recovery. However, the trial court found "[t]his 121.27 amount is only approximate because it covered ***all*** of the late payment and ALE work, rather than apportioning work on the ALE contract recovery from work on the ALE tort recovery." The trial court found "the overwhelming bulk of the ALE work was spent on the contract claim" and apportioned 99% of the 121.27 hours to the ALE contract claim, which resulted in 120.06 hours. The trial court divided 120.06 by the total hours of 455.6 to reach 0.2635 (or 26.35%), and it then multiplied $10,315 by 26.35% to reach $2,718 as the total amount of *Brandt* fees recoverable.[7]

---

[7] Appellant also states "the trial court found the total number of hours spent on the case was 455.6 however disallowed the time spent on obtaining the various payments documented in (JA 273), thinking only the bad faith denial of 5 weeks of 'Loss of Use' was compensable." To the extent appellant is attempting to argue the trial court erroneously excluded hours, that argument is forfeited because appellant has not articulated, with citation to the record, how many hours were supposedly excluded and how that would have changed the amount of awarded fees under the *Cassim* framework. (See *L.O., supra,* 96 Cal.App.5th at p. 620.)

Appellant contends his recovery was small and *Cassim* is distinguishable because it concerned a large recovery. We are not persuaded *Cassim* is limited only to large recoveries.

Appellant also focuses on policy reasons to support his argument more attorney fees should have been awarded, including asserting there is an unbalanced relationship between insured and insurer and the ruling destroys incentives for attorneys to take insurance cases with small damages (appellant says the ruling "is a financial disaster" for his counsel). According to appellant, the trial court should have applied the lodestar method for calculating attorney fees.[8] While cases have applied the lodestar method in other contexts, cases addressing the method of calculating attorney fees *qua* attorney fees are not controlling because *Brandt* fees are damages "proximately caused by the tort" and "must be distinguished from recovery of attorney[] fees *qua* attorney[] fees." (See *Brandt, supra,* 37 Cal.3d at p. 817.) Instead, *Cassim* dictates how *Brandt* fees are calculated in the context of a contingent fee—which was not the lodestar method—and we are bound to apply it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

---

[8] "'[I]n so-called fee shifting cases, in which the responsibility to pay attorney fees is statutorily or otherwise transferred from the prevailing plaintiff or class to the defendant, the primary method for establishing the amount of "reasonable" attorney fees is the lodestar method. The lodestar (or touchstone) is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier" to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented.'" (*Thayer v. Wells Fargo Bank* (2001) 92 Cal.App.4th 819, 833.)

14

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.