Filed 3/23/23  Weingarten v. Certain Underwriters at Lloyd's etc. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FOUR

| | |
|---|---|
| ALEX WEINGARTEN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER IML-0114N0-190029,<br><br>    Defendant and Appellant. | B321148<br><br>(Los Angeles County Super. Ct. No. 20STCV15841) |

APPEAL from an order of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge. Affirmed.

Wilson Elser Moskowitz Edelman & Dicker and B. Otis Felder for Defendants and Appellants.

Herzog, Yuhas, Ehrlich & Ardell, Ian Herzog, Evan D. Marshall, Justin Ehrlich and Eric Freeman for Plaintiff and Respondent.

# INTRODUCTION

Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy Number IML-0114N0-190029 (Lloyd's Underwriters)[1] appeal from the trial court's order denying their motion to compel arbitration of plaintiff Alex Weingarten's complaint for breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent misrepresentation. In their opening brief, Lloyd's Underwriters also challenge the trial court's denial of their motion to quash for lack of personal jurisdiction. With respect to the motion to quash, for the reasons discussed below, we conclude: (1) because Lloyd's Underwriters failed to appeal from the order denying their motion to quash, we lack jurisdiction to address the merits of their argument; and (2) even if we had jurisdiction, Lloyd's Underwriters waived their personal jurisdiction challenge by failing to timely petition for writ of mandate after the trial court denied their motion and instead filing an answer to the operative complaint and a motion to compel arbitration. We further

---

1       "Certain Underwriters at Lloyd's, London" is the term used by Weingarten to refer to the individual underwriters of Weingarten's insurance policy. By way of background,"[t]he anonymous underwriters of Lloyd's insurance, who are commonly referred to as 'Names,' invest in a percentage of the policy risk. . . . [E]ach Lloyd's Name is exposed to unlimited liability, but only for his or her share of the loss on a policy that the Name has underwritten. In other words, the liability of each Name on any given policy, while unlimited, is several and not joint. Insurance from Lloyd's is typically subscribed to by hundreds of Names belonging to different subgroups known as 'syndicates.'" (*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.* (2nd Cir. 1998) 160 F.3d, 925, 929.)

conclude the trial court did not err by denying Lloyd's Underwriters' motion to compel arbitration because no arbitration agreement exists between Lloyd's Underwriters and Weingarten. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Malpractice Action

In 2013, Adam Levin, Tristen Lazareff, and Criterion Capital Partners, LLC, retained Weingarten Brown LLP to defend them in the case entitled *MXB Holdings LP, et al. v. Adam Levin, et al.*, San Francisco Superior Court Case No. CGC-12-5188820 (the *MXB* action). The retainer agreement (the Levin/Weingarten retainer agreement) contained an arbitration provision, which provided in part: "Any disputes arising out of or relating to this Agreement, or to enforce or interpret this Agreement shall be resolved by binding arbitration administered by JAMS, as more specifically provided below. The arbitration will be governed by the laws of the State of California, regardless of whether other laws or locations are involved in the representation."

On February 25, 2015, Adam Levin and Criterion Capital Partners, LLC, filed an action in the Los Angeles Superior Court for legal malpractice and breach of fiduciary duty against Alex Weingarten, Weingarten Brown LLP, and Venable LLP (the malpractice action).[2] The complaint alleged Weingarten negligently represented the defendants in the *MXB* action. The

---

2    The complaint alleged Venable LLP acquired Weingarten Brown LLP in July 2014, assumed the duties and obligations of Weingarten Brown LLP, and assumed an attorney-client relationship with plaintiffs.

3

parties later stipulated to arbitration before JAMS based on the arbitration provision in the retainer agreement. Weingarten notified Lloyd's Underwriters about the malpractice action,[3] and Lloyd's Underwriters accepted defense of the Weingarten defendants.

The arbitrator found in favor of Adam Levin and Criterion Capital Partners, LLC, and issued an award that exceeded Weingarten's insurance coverage.

### B. The Bad Faith Action

In April 2020, Weingarten sued Lloyd's Underwriters for breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and negligent misrepresentation.[4] In the operative complaint (the SAC), filed on April 20, 2021, Weingarten alleges Lloyd's Underwriters acted in bad faith in the malpractice action by, among other things, "[r]ejecting settlement within the policy limits when they knew or should have known that the potential judgment could exceed the amount of the limits and by failing to act in good faith and weigh the insureds' interests at least as equally as their own[.]"

In response to the SAC, Lloyd's Underwriters moved to quash service of the complaint, contending they were neither

---

3     Lloyd's Underwriters issued a malpractice policy to Weingarten Brown LLP, effective January 1, 2014.

4     Weingarten also sued Landmark American Insurance Company and Robert A. Cutbirth. They are not parties to this appeal.

properly named in the complaint nor properly served.[5] Weingarten opposed the motion, detailing the "numerous occasions [Weingarten] perfected service" on Lloyd's Underwriters.[6] On January 10, 2022, the trial court denied Lloyd's Underwriters' motion to quash.

On January 31, 2022, Lloyd's Underwriters filed a motion to compel arbitration of the SAC based on the arbitration provision in the Levin/Weingarten retainer agreement. They argued that although they are nonsignatories to the Levin/Weingarten retainer agreement, they are third party beneficiaries of the agreement and, therefore, they are entitled to enforce the arbitration clause. They further argued Weingarten is bound under principles of estoppel because Weingarten moved to compel arbitration of the underlying malpractice action. Weingarten opposed the motion, arguing: the insurance policy issued by Lloyd's Underwriters does not contain an arbitration provision; Lloyd's Underwriters are not intended, or third party, beneficiaries of the Levin/Weingarten retainer agreement; and the doctrine of equitable estoppel is inapplicable. On March 29, 2022, after a hearing on the motion to compel arbitration, the trial court denied the motion.

On April 18, 2022, Lloyd's Underwriters filed a notice of appeal from the March 29, 2022 order denying their motion to

---

5    The motion to quash is not included in the record on appeal. The parties agree, however, on the grounds on which the motion was filed.

6    Because we do not reach the merits of Lloyd's Underwriters' contention that the court erred by denying their motion to quash, we omit recitation of the facts regarding service of the complaint and amended complaints.

compel arbitration. On April 22, 2022, Lloyd's Underwriters filed an answer to the SAC.

## DISCUSSION

### A. Motion to Quash

Lloyd's Underwriters contend the trial court erred by denying their motion to quash service of summons because Weingarten failed to properly name and serve "the alleged foreign insurers who do not do business in California." This issue is not properly before us on appeal for two reasons.

First, Lloyd's Underwriters failed to identify the order denying their motion to quash in their notice of appeal. "[T]he timely filing of an appropriate notice of appeal or its legal equivalent is an absolute prerequisite to the exercise of appellate jurisdiction." (*Hollister Convalescent Hospital, Inc. v. Rico* (1975) 15 Cal.3d 660, 670.) "Generally, we must liberally construe a notice of appeal in favor of its sufficiency. (Cal. Rules of Court, rules 8.100(a)(2), 8.405(a)(3).) A notice of appeal shall be 'liberally construed so as to protect the right of appeal if it is *reasonably clear* what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75, original italics.) "But there are limits to our ability to liberally construe a notice of appeal. 'The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all.'" (*Id*. at p. 76.) "Therefore, when a notice of appeal manifests a 'clear and unmistakable' intent to appeal only from one order, we cannot liberally construe the notice to apply to a different, omitted order." (*Ibid*.)

6

Lloyd's Underwriters' notice of appeal omits any reference to the January 10, 2022 order denying their motion to quash. Instead, the notice expressly states Lloyd's Underwriters intended to appeal solely from the March 29, 2022 "Order denying Defendant[s'] Petition and Motion to Compel Arbitration filed by [Lloyd's Underwriters] under Code of Civil Procedure § 1294 & CRC 8.712 (Chap. 2)[.]" Thus, we cannot liberally construe Lloyd's Underwriters' notice of appeal to embrace the January 10, 2022 order denying their motion to quash. (See *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225 ["[I]t is well 'beyond liberal construction' to view an appeal from one order as an appeal from a 'further and different order'"].) We therefore lack jurisdiction to review the omitted order. (See *Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170 ["'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal"].)

Second, even if we had jurisdiction, we note Lloyd's Underwriters waived any purported personal jurisdiction defect by failing to timely file a petition for writ of mandate. "A general appearance occurs when the defendant takes part in the action or in some manner recognizes the authority of the court to proceed." (*Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52; see also Code Civ. Proc.,[7] § 1014 ["A defendant appears in an action when the defendant answers" the complaint].) "Such participation operates as consent to the court's exercise of jurisdiction in the proceeding." (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1,

---

7      All further undesignated references are to the Code of Civil Procedure.

7

7.) "By generally appearing, a defendant relinquishes all objections based on lack of personal jurisdiction or defective process or service of process." (*Id*. at p. 8.)

"Section 418.10 fixes the point in time at which a defendant who participates in litigation after filing a motion to quash will be deemed to have made a general appearance." (*ViaView, Inc. v. Retzlaff* (2016) 1 Cal.App.5th 198, 212 (*ViaView*).) Subdivision (e)(1) of section 418.10 provides: "If the court denies the motion [to quash], the defendant or cross-defendant is not deemed to have generally appeared until entry of the order denying the motion." "Subdivision (e)(2) extends that time in cases where a party petitions for a writ of mandate: 'If the motion . . . is denied and the defendant . . . petitions for a writ of mandate . . . , the defendant . . . *is not deemed to have generally appeared until the proceedings on the writ petition have finally concluded*.' (Italics added.) The petition for writ of mandate must be filed 'within 10 days after service . . . of a *written notice of entry of an order of the court denying* [*the*] *motion*, or within any further time not exceeding 20 days that the trial court may for good cause allow.' (§ 418.10, subd. (c), italics added.)" (*ViaView, supra*, 1 Cal.App.5th at p. 212.) Thus, subdivision (e) "'does not change the essential rule that "[a] defendant submits to the court's jurisdiction by making a general appearance in an action" by "participat[ing] in the action in a manner which recognizes the court's jurisdiction." [Citation.] It merely delays the effect of such actions until the motion to quash is denied or, if the defendant seeks writ review, until proceedings on the writ have concluded.'" (*ViaView, supra*, 1 Cal.App.5th at p. 211.)

Here, as discussed above, the trial court entered the order denying Lloyd's Underwriters' motion to quash on January 10,

2022. Rather than file a petition for writ of mandate, as required by section 418.10, subdivision (c), on January 31, 2022, Lloyd's Underwriters filed a motion to compel arbitration of the claims in the SAC. After the trial court denied their motion to compel, Lloyd's Underwriters filed an answer to the SAC. By filing a motion to compel arbitration and an answer to the SAC without *first* filing a petition for writ of mandate seeking reversal of the order denying their motion to quash service, Lloyd's Underwriters generally appeared in the action, and thus waived their personal jurisdiction challenge. (See, e.g., *ViaView, supra*, 1 Cal.App.5th at p. 210 ["A defendant submits to the court's jurisdiction by making a general appearance in an action and thereby waives the defense of lack of personal jurisdiction"]; see also *People v. Mena* (2012) 54 Cal.4th 146, 155-156 ["Under Code of Civil Procedure section 418.10, subdivision (c), a defendant in a civil case may only challenge by extraordinary writ a trial court order refusing to quash service" because "the Legislature has made writ relief the exclusive avenue to address trial court error"]; *State Farm General Ins. Co. v. JT's Frames, Inc.* (2010) 181 Cal.App.4th 429, 437 ["It has long been the rule in California that a defendant who chooses to litigate the merits of a lawsuit after its motion to quash has been denied has no right to raise the jurisdictional question on appeal"].)[8]

---

8      We note Lloyd's Underwriters correctly state in their opening brief that subject matter jurisdiction can never be waived. But here, Lloyd's Underwriters do not argue the trial court lacks jurisdiction to hear the subject matter of the dispute, i.e., a bad faith insurance matter. Rather, they argue the trial court lacks personal jurisdiction over Lloyd's Underwriters because they allegedly were misnamed in the complaint and not

9

## B.     Motion to Compel Arbitration

Turning to the order properly before us, Lloyd's Underwriters contend the trial court erred by denying their motion to compel arbitration based on the arbitration clause in the Weingarten/Levin retainer agreement. Lloyd's Underwriters acknowledge they were not parties to the Weingarten/Levin retainer agreement. They nevertheless argue arbitration agreements are enforced with regularity against nonsignatories, and list six theories by which a nonsignatory may be bound to arbitrate: incorporation by reference; assumption; agency; veil-piercing or alter ego; estoppel; and third party beneficiary. Although not entirely clear, Lloyd Underwriters appear to rely on third party beneficiary and estoppel theories as a basis for requiring Weingarten to arbitrate his claims. Neither of those theories, however, apply here.

"A third party beneficiary is someone who may enforce a contract because the contract is made expressly for his [or her] benefit." (*Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, 602.) "'The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract.'" (*Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 967.) "[T]he terms of the contract must demonstrate the express intent to confer the benefit." (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 302.)

---

properly served. (See, e.g., *Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512, original italics ["Generally subject matter jurisdiction is the court's power to hear and resolve a particular dispute or *cause of action*, while personal jurisdiction relates to the power to bind a particular *party . . . .*"].)

Applying these principles, we conclude Lloyd's Underwriters are not third party beneficiaries of the Levin/Weingarten retainer agreement. The retainer agreement describes the scope of legal services to be provided by Weingarten's law firm to the defendants in the *MXB* action. Section 12 of the agreement provides Weingarten's law firm will maintain "errors and omissions ('malpractice') insurance for the services to be rendered pursuant to this agreement." Nothing in the retainer agreement, however, demonstrates an express intent to benefit a third party—whether Lloyd's Underwriters specifically or any other insurance company generally.

We likewise reject Lloyd's Underwriters' contention that Weingarten is equitably estopped from opposing their motion to compel arbitration. Under the doctrine of equitable estoppel, "'a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are "intimately founded in and intertwined" with the underlying contract obligations.'" (*JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1237.) "'This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement.'" (*Id*. at p. 1238.)

Here, the FAC does not assert claims against Lloyd's Underwriters that are based on the Levin/Weingarten retainer agreement; the claims are based on the insurance policy provided to Weingarten by Lloyd's Underwriters. Specifically, the FAC alleges Lloyd's Underwriters breached the implied covenant of

11

good faith and fair dealing by, among other things, rejecting the settlement within the policy limits, narrowly interpreting the provisions of the insurance policy, failing to adequately assess and investigate the merits of claims and defenses asserted in the underlying malpractice action, and failing to act in the best interests of the insureds by unreasonably failing or refusing to engage in settlement discussions despite knowing Weingarten's desire to settle the action. The FAC, therefore, does not rely on or use any terms of the Levin/Weingarten retainer agreement as a foundation for its claims. (See, e.g., *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 218 [declining to apply the doctrine of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause where the plaintiffs' complaints "d[id] not rely on or use any terms or obligations of the operating agreements [which contained the arbitration clause] as a foundation for their claims"].) Accordingly, we conclude there is no basis in law or equity for preventing Weingarten from suing Lloyd's Underwriters in court.

Lloyd's Underwriters also note that a nonsignatory may be bound to arbitrate where there is a preexisting relationship between one of the parties to the arbitration agreement and a nonsignatory. They rely on the allegation in the FAC that "Weingarten entered into an agreement with Levin to share a portion of the recovery which Weingarten may receive" in this bad faith action. But this does not create a preexisting relationship between Lloyd's Underwriters on the one hand, and Levin or Weingarten on the other.

Finally, Lloyd's Underwriters alternatively contend an arbitrator, not the court, must determine whether the dispute between Weingarten and Lloyd's Underwriters should be

12

arbitrated. They rely on the proposition that questions of an arbitration agreement's scope "are for the arbitrators and not for the court to resolve." (*Felner v. Meritplan Insurance Co.* (1970) 6 Cal.App.3d 540, 543.) The issue here, however, is not the *scope* of the Levin/Weingarten retainer agreement, but whether an arbitration agreement *exists* between Weingarten and Lloyd's Underwriters. Only the court can decide the threshold issue of existence of an agreement to arbitrate. (See *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) __ U.S. __, __ [139 S.Ct. 524, 530, 202 L.Ed.2d 480] ["To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."].) Thus, the trial court properly determined the threshold issue of whether the nonsignatory defendants (Lloyd's Underwriters) could compel the signatory plaintiff (Weingarten) to arbitrate his claims.

## DISPOSITION

The March 29, 2022 order is affirmed. Weingarten is awarded his costs on appeal.

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, Acting P.J.

We concur:

COLLINS, J.

STONE, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.